1   BRIAN A. VOGEL, SBN 167493
2   brian@bvogel.com
    HEATHER A. QUEST, SBN 186740
3   heather@bvogel.com
    THE LAW OFFICES OF BRIAN A. VOGEL, PC
4   770 County Square Dr., Ste. 104
5   Ventura, CA 93003
    Phone: (805) 654-0400
6   Facsimile: (805) 654-0326
7
8   Attorneys for Plaintiff R.R., by and through his
    Guardian Ad Litem and Mother, LUCINA GARCIA
9
10  DAVID R. RING, SBN 134823
    david@bamieherickson.com
11  RON BAMIEH, SBN 159413
    ronb@bamieherickson.com
12  BAMIEH &ERICKSON, PLC
13  692 E. Thompson Blvd.
    Ventura, CA 93001
14  Phone: (805) 643-5555
15  Facsimile: (805) 643-5558
16
    Attorneys for Plaintiffs GUILLERMO RAMIREZ and TERESA
17  RAMIREZ

18              UNITED STATES DISTRICT COURT

19              CENTRAL DISTRICT OF CALIFORNIA

20

21  GUILLERMO RAMIREZ, an individual    )   Case No. CV13-01615 MWF (ANx)
22  and successor-in-interest to ROBERT  )
    RAMIREZ, deceased; TERESA            )   **SECOND AMENDED COMPLAINT**
23  RAMIREZ, an individual and successor- )   **FOR DAMAGES**
    in-interest to ROBERT RAMIREZ,       )
24  deceased; R.R. [name redacted], a minor )
25  and successor-in-interest to ROBERT   )   **Survival Claims:**
    RAMIREZ, deceased, by and through     )
26  his Guardian Ad Litem and Mother,     )   1.   42 U.S.C. § 1983
    LUCINA GARCIA,                        )        Use of Excessive and Deadly Force
27                                        )   2.   42 U.S.C. § 1983
28                                        )        Deliberate Indifference to Medical

                                  1

|  | |
|---|---|
| Plaintiffs, | ) |
| vs. | ) |
|  | ) |
| OXNARD POLICE DEPARTMENT, | ) |
| CITY OF OXNARD, CHIEF JERI | ) |
| WILLIAMS, an individual, STEVEN | ) |
| RAMIREZ, an individual, MICHAEL | ) |
| BOCANEGRA, an individual, | ) |
| ROSLYNN WILFERT, an individual, | ) |
| PEDRO RODRIGUEZ, an individual, | ) |
| AARON ZAVALA, an individual, | ) |
| KYLE BRANTNER, an individual, | ) |
| MATTHEW ROSS, an individual, and | ) |
| DOES 1-10, inclusive. | ) |
|  | ) |
| Defendants. | ) |
| _____ | ) |

Needs

3.  Municipal Liability on
    Decedent's 42 U.S.C. § 1983
    Claims - Deliberate Indifference
4.  Municipal Liability on
    Decedent's 42 U.S.C. § 1983
    Claims - Failure to Screen, Train,
    Supervise and Reprimand
5.  Assault
6.  Battery

**Individual Claims:**

7.  42 U.S.C. § 1983
    State Interference with Familial
    Relationship
8.  Municipal Liability on
    Plaintiffs' 42 U.S.C. § 1983
    Claims - Deliberate Indifference
9.  Municipal Liability on
    Plaintiffs' 42 U.S.C. § 1983
    Claims -Failure to Screen, Train,
    Supervise and Reprimand
10. Wrongful Death

**DEMAND FOR JURY TRIAL**

## INTRODUCTION

1.     This action arises under Title 42 of the United States Code, Section 1983 and the

Fourth and Fourteenth Amendments of the United States Constitution.  The unlawful acts

and practices alleged herein occurred in the City of Oxnard, California, which is within

this judicial district.  Further, this action arises under *California Code of Civil Procedure*

sections 340(3), 377, 377.10(b), 377.11, 377.20, 377.30, 377.32(a), 377.34, 377.60(a),

377.61, and 377.62, and *California Probate Code* sections 6402, as Plaintiffs

GUILLERMO RAMIREZ and TERESA RAMIREZ are the surviving parents and alternative successors in interest of ROBERT RAMIREZ, deceased, ("DECEDENT"), and Plaintiff R.R. is the surviving issue and an alternative successor in interest of DECEDENT.

### JURISDICTION AND VENUE

2.      Subject matter jurisdiction for this action is conferred upon this Court pursuant to 28 U.S.C. §§1331 and 1343, as it arises under 42 U.S.C. §1983.  Jurisdiction is also conferred upon this Court by *California Code of Civil Procedure* section 340(3).

3.      The acts complained of arose in the Central District of California.  Therefore, venue properly lies here pursuant to 28 U.S.C. § 1391. Venue in this Court is also proper pursuant to 28 U.S.C. §1391(b)(1) in that one or more Defendants resides in or has its principal place of business in the Central District of California.

4.      The survival claims in this action are joined with the individual wrongful death claims pursuant to Code Civ. Proc., § 377.62, as all claims arise out of the same wrongful act or neglect.

### JURISDICTIONAL PREREQUISITES

5.      Plaintiffs GUILLERMO RAMIREZ and TERESA RAMIREZ have fully complied with *California Government Code* section 910 *et seq.* by timely filing claims with Defendant CITY OF OXNARD and timely filing this lawsuit thereafter.  Plaintiff R.R. has complied with *California Government Code* section 910 *et seq.* by timely filing a claim with Defendant CITY OF OXNARD.    Plaintiff R.R. has not yet received an

acceptance or rejection on its claim and will amend this Complaint once he has.

## PARTIES

6.      Decedent ROBERT RAMIREZ ("DECEDENT"), at all times herein mentioned, was a resident of Oxnard, State of California. He died on June 23, 2012 after the causes of action alleged herein arose in his favor. DECEDENT would have been a plaintiff in this action had he lived.

7.      Plaintiff GUILLERMO RAMIREZ is the natural father of DECEDENT and is his surviving heir-at-law. Plaintiff GUILLERMO RAMIREZ is a successor in interest in the alternative and succeeds to DECEDENT'S causes of action against Defendants named herein because there is no personal representative of the estate of DECEDENT ROBERT RAMIREZ. Plaintiff GUILLERMO RAMIREZ will have timely executed and filed the declaration under penalty of perjury required by *California Code of Civil Procedure* section 377.32.

8.      At all times mentioned herein, Plaintiff GUILLERMO RAMIREZ was and is a resident of Oxnard, California.

9.      Plaintiff TERESA RAMIREZ is the natural mother of DECEDENT and is his surviving heir-at-law. Plaintiff TERESA RAMIREZ is the successor in interest in the alternative and succeeds to DECEDENT'S causes of action against Defendants named herein because there is no personal representative of the estate of DECEDENT ROBERT RAMIREZ. Plaintiff TERESA RAMIREZ has timely executed and filed the declaration under penalty of perjury required by *California Code of Civil Procedure* section 377.32.

10.    At all times mentioned herein, Plaintiff TERESA RAMIREZ was and is a resident of Oxnard, California.

11.    Plaintiff R.R. at all relevant times mentioned herein, was an individual and resident of Oxnard, California.  He is the natural issue of DECEDENT and is his surviving heir-at-law.  His interests in this matter are represented by and through his guardian ad litem and mother, LUCINA GARCIA. Plaintiff R.R. is the successor in interest in the alternative and succeeds to DECEDENT'S causes of action against Defendants named herein because there is no personal representative of the estate of DECEDENT ROBERT RAMIREZ. Plaintiff R.R., by and through his guardian ad litem, LUCINA GARCIA, has timely executed and filed the declaration under penalty of perjury required by *California Code of Civil Procedure* section 377.32.

12.    Plaintiffs GUILLERMO RAMIREZ, TERESA RAMIREZ and Plaintiff R.R., by and through his guardian ad litem, LUCINA GARCIA, are informed that under *California Code of Civil Procedure* §§ 377.30 *et seq.* and *California Probate Code* §§ 6401 *et seq.*, as well as similar statutes, that there can be only one category of successor in interest who has standing to plead the survival claims, to wit, either the parents or the issue of DECEDENT.  Currently, it is not clear who is the appropriate successor in interest in this matter.  Plaintiffs, therefore, on the survival claims only, are pleading themselves as alternative successors in interest.  Plaintiffs will amend these pleadings when the matter of who is the appropriate successor in interest is resolved.

13.    At all times mentioned herein, Defendant CITY OF OXNARD, ("CITY") was and

is a public entity authorized by law to establish certain departments, responsible for enforcing the laws and protecting the welfare of the citizens of the City of Oxnard.  At all times mentioned herein, Defendant CITY was and is ultimately responsible for overseeing the operation, management, and supervision of the Oxnard Police Department. Defendant CITY is liable for the negligent and reckless acts of all of these aforementioned parties, personnel and entities, as described herein.

14.     At all times material herein, Defendant OXNARD POLICE DEPARTMENT ("OPD"), was and is a public entity responsible for providing law enforcement services for Defendant CITY.

15.     At all times mentioned herein, Defendant OPD was and is the duly authorized law enforcement agency in and for the City of Oxnard, California, and was and is responsible for overseeing the operation, management, and supervision of the OPD employees who patrol in Oxnard, California, and is liable for the negligent and reckless acts of all employees, personnel, and entities, including, but not limited to, Defendants Officer STEVEN RAMIREZ, Officer MICHAEL BOCANEGRA, Officer ROSLYNN WILFERT, Officer PEDRO RODRIGUEZ, Officer AARON ZAVALA, Officer KYLE BRANTNER AND Officer MATTHEW ROSS, their supervisors, and any DOES 1-10, inclusive.

16.     At all times material herein, Defendant CHIEF JERI WILLIAMS, ("WILLIAMS"), was the police chief of Defendant CITY, and was responsible for supervising, operating, and managing OPD and was further responsible for the policies,

customs, and procedures used at OPD.  She is being sued in her individual and official capacities.

17.     At all times material herein, Senior Officer STEVEN RAMIREZ ("RAMIREZ") was, and is, a natural person, residing in the Central District of California and acting as a duly appointed police officer employed by Defendant CITY at Defendant OPD which is located in the Central District of California.  Plaintiffs are informed and believe and based thereon allege that Defendant RAMIREZ was the acting supervisor at the scene of the incident and as such, at all material times herein, had and has supervisory authority over Defendant OFFICERS and DOES 1-10.

18.     At all times material herein, Officer MICHAEL BOCANEGRA ("BOCANEGRA") was, and is, a natural person, residing in the Central District of California and acting as a duly appointed police officer employed by Defendant CITY at Defendant OPD which is located in the Central District of California.

19.     At all times material herein, Officer ROSLYNN WILFERT ("WILFERT"), was, and is, a natural person, residing in the Central District of California and acting as a duly appointed police officer employed by Defendant CITY at Defendant OPD which is located in the Central District of California.

20.     At all times material herein, Officer PEDRO RODRIGUEZ ("RODRIGUEZ"), was, and is, a natural person, residing in the Central District of California and acting as a duly appointed police officer employed by Defendant CITY at Defendant OPD which is located in the Central District of California.

21.    At all times material herein, Officer AARON ZAVALA ("ZAVALA"), was, and is, a natural person, residing in the Central District of California and acting as a duly appointed police officer employed by Defendant CITY at Defendant OPD which is located in the Central District of California.

22.    At all times material herein, Officer KYLE BRANTNER ("BRANTNER"), was, and is, a natural person, residing in the Central District of California and acting as a duly appointed police officer employed by Defendant CITY at Defendant OPD which is located in the Central District of California.

23.    At all times material herein, Officer MATTHEW ROSS ("ROSS"), was, and is, a natural person, residing in the Central District of California and acting as a duly appointed police officer employed by Defendant CITY at Defendant OPD which is located in the Central District of California.

24.    Defendant Officer STEVEN RAMIREZ, Defendant Officer MICHAEL BOCANEGRA, Defendant Officer ROSLYNN WILFERT, Defendant Officer PEDRO RODRIGUEZ, Defendant Officer AARON ZAVALA, Defendant Officer KYLE BRANTNER and Defendant Officer MATTHEW ROSS are collectively referred to herein as "Defendant OFFICERS".

25.    Upon information and belief, Defendants DOES 1-10 were each responsible in some manner for the injuries and damages alleged herein. The true names and identities of Defendants DOES 1-10 are presently unknown to Plaintiffs.  Upon information and belief, at all relevant times herein Defendants DOES 1-10 were employees and/or agents

of CITY and/or OPD, acting at all relevant times within the scope of their employment with CITY and/or OPD. Upon information and belief, such employees include, *inter alia*, OPD police officers or supervising employees and/or agents who were involved in any manner in the incidents alleged in this Complaint. Plaintiffs will amend this Complaint to allege their true names and capacities when they are ascertained. Plaintiffs are informed, believe and based thereon alleges that each Defendant DOE herein is in some manner responsible for the injuries and damages suffered by Plaintiffs.

## GENERAL ALLEGATIONS

26.    This action is brought under Title 42 U.S.C. §§1983, 1988, and the Fourth and Fourteenth Amendments of the United States Constitution and pursuant to the general laws of the United States and the State of California. Plaintiffs allege that on June 23, 2012, DECEDENT was beaten with excessive force by Defendant OFFICERS and was denied access to necessary medical treatment by Defendant OFFICERS, which caused his death on the same date.

27.    At all times relevant to the facts alleged herein, Defendant OFFICERS and DOES 1-10, and each of them, including Defendants RAMIREZ, BOCANEGRA, WILFERT, RODRIGUEZ, ZAVALA, BRANTNER and ROSS, are responsible for the unlawful conduct and resulting injury by, *inter alia*, personally participating in the conduct, or acting jointly and in concert with others who did so; by authorizing, acquiescing, or failing to take action to prevent the unlawful conduct. Each said defendant was acting in the course and scope of such employment and acting under color of law.

28.     All non-municipal Defendants including RAMIREZ, BOCANEGRA, WILFERT, RODRIGUEZ, ZAVALA, BRANTNER and ROSS and DOES 1 through 10, are being sued in their individual and official capacities, and at the time of the acts complained, were each duly appointed and acting officers employed as such by Defendants CITY and OPD, and at the time of the acts hereinafter complained of, each said defendant was acting in the course and scope of such employment and acting under color of law, by promulgating policies and procedures pursuant to which the unlawful conduct occurred; by failing and refusing, with deliberate indifference to Plaintiffs, to intervene to stop the unlawful conduct, and by ratifying the conduct that occurred by agents and officers under their direction and control.

29.     At all times relevant to the facts alleged herein municipal Defendants CITY, OPD, WILLIAMS and DOES 1-10 were at all times responsible for the hiring, training, supervision, and discipline of other defendants, and were responsible for violation of Plaintiffs' rights.

30.     At all material times, each Defendant was individually and jointly engaged in tortuous activity, resulting in the deprivation of Plaintiffs' constitutional rights and other harm.

31.     Plaintiffs are informed and believe, and on such information and belief alleges that, at all times mentioned herein, each of the non-municipal Defendants was the agent and employee of Defendants CITY and the OPD and, in doing the things herein mentioned, were acting within the scope of their authority as such agents and employees

1   and with the permission and consent of their Co-Defendants.

2   32.    Plaintiffs are informed and believe that each Defendant sued herein was

3   responsible in some manner for the events as hereinafter described, and proximately

4

5   caused injuries and damages to Plaintiffs.

6                               **FACTUAL ALLEGATIONS**

7

8   33.    On or about June 23, 2012, at approximately 9:45 p.m., DECEDENT drove to his

9   friend, Erica Pedro's house at 1158 South L Street, Oxnard, California.

10  34.    Upon arriving, DECEDENT informed Ms. Pedro that he had swallowed an "8

11

12  ball" of methamphetamine which was contained in a plastic baggie because he had been

13  stopped by a police car and he did not want to get caught with it.

14  35.    Ms. Pedro observed that DECEDENT was acting strangely.  She offered to take

15  him to the emergency room, but DECEDENT declined.  At this point, DECEDENT was

16
    on the front lawn of the Pedro residence.
17

18  36.    Ms. Pedro's brother-in-law, Arturo Pedro, arrived and Ms. Pedro told Mr. Pedro

19  that DECEDENT had swallowed a bag containing an "8 ball" of methamphetamine.

20

21  37.    Concerned that DECEDENT may have been overdosing on methamphetamine,

22  Arturo Pedro called 911 at 10:40 p.m.

23  38.    Mr. Pedro informed the 911 dispatcher that he needed an ambulance to come

24
    because he thought that DECEDENT was overdosing.  Mr. Pedro specifically informed
25

26  the 911 dispatcher that "the guy got pulled over by the police and he panicked and

27  swallowed a eight bell of meth."

28

                                        11

39.   Mr. Pedro further informed the 911 dispatcher that DECEDENT needed medical attention.  The dispatcher asked Mr. Pedro whether he needed to send in the police first.  Mr. Pedro responded that the police should be sent first.  He also stated that it appeared that DECEDENT was having a fit that was "almost borderline seizure."  The dispatcher contacted both the police and the emergency response technicians in response to the call.

40.   Defendant OFFICERS arrived at the Pedro residence approximately five minutes after Mr. Pedro made the 911 call.

41.   DECEDENT moved from the front lawn to the front porch of the Pedro residence as Defendant OFFICERS arrived.  Initially, three officers arrived.  Arturo Pedro informed the first officer that arrived that DECEDENT had swallowed an 8 ball of meth and that he needed help.  The three officers approached DECEDENT in a semi-circle fashion, with at least one officer pointing his or her taser at DECEDENT.

42.   Arturo Pedro told the police officers that they did not need to tase him, they just needed to hold him and calm him down so that the EMTs could do their job.

43.   Erica Pedro also informed Defendant OFFICERS that DECEDENT had swallowed some drugs and that he was not okay.  She informed them that she had observed DECEDENT hallucinating.  Defendant OFFICERS told Ms. Pedro to get out of the way.  One officer stated that they had to calm DECEDENT down in order to get him to the emergency room.

44.   DECEDENT was generally unresponsive to the police questioning while he was on the porch.  At least three officers pointed their tasers at DECEDENT'S body while he

12

was sitting on the porch.

45.     Approximately four additional officers arrived at this point.  These officers joined the others in surrounding DECEDENT on the porch.  One officer told DECEDENT that he should get on his stomach.  DECEDENT then stood up and approximately six Defendant police officers descended on DECEDENT, grabbed him and forced him face-down onto concrete.  They then got on top of him and beat him over his face and body.

46.     While the officers were on top of DECEDENT, he was face down, on his stomach, and in a prone position.  Defendant WILFERT, who was on DECEDENT'S; back put her knee down onto DECEDENT'S back.  Another Defendant Officer utilized an "arm bar choke hold" on DECEDENT.  Several Defendant OFFICERS were on DECEDENT'S legs.  Defendant OFFICERS put DECEDENT'S hands behind his back.

47.     While DECEDENT was on the ground under Defendant OFFICERS, he began to scream in pain and he yelled several times, "Stop, you are hurting me!"

48.     Defendant OFFICERS applied one handcuff and then used a collapsible baton to pry DECEDENT'S other arm out and put it behind his back.  Immediately after, Defendant OFFICERS placed the handcuffs on his other arm and, while they were still on top of him, DECEDENT stopped moving and fell silent.

49.     While Defendant OFFICERS were on top of him, DECEDENT screamed in pain continuously until he lost consciousness.  At first DECEDENT hollered and struggled. He then made a strange screaming and crying sound for about 30-45 seconds, then was silent.  Witnesses heard him make choking sounds.

13

50.     While he was still alive, Defendant OFFICERS tased him several times.

51.     When DECEDENT stopped moving, all but one police officer got off of him. One remained, turned DECEDENT on his side and stated, "He's not breathing." At that point, Defendant WILFERT checked DECEDENT for a pulse. She stated that he had a pulse and began to rub DECEDENT'S chest. All of the Defendant OFFICERS turned off their flashlights and crowded around the DECEDENT.

52.     Throughout this time period, Arturo Pedro informed at least three different officers that DECEDENT had swallowed an 8 ball of meth.

53.     At some point, the emergency medical technicians ("EMTs") from Gold Coast Ambulance arrived at the scene. It is currently unknown at what time the EMTs arrived or who initially spoke with them. According to the EMT report, Defendant OFFICERS told the EMTs that the patient was conscious and combative approximately one minute prior to the EMTs' arrival at which time he became unresponsive. The EMT report also indicates that the EMTs arrived at approximately 11:01 p.m.

54.     The EMTs' initial assessment of DECEDENT was that he was pulseless. The EMTs "airway-bagged" his mouth and gave him oxygen. They also injected him with three 1 mg doses of Epinephrine and sodium bicarbonate. The EMTs intubated him at approximately 11:14 p.m. None of these treatments brought back DECEDENT'S pulse or otherwise revived him.

55.     After working on DECEDENT for approximately ten minutes, the EMTs transported him to St. John's Regional Medical Center in Oxnard, California.

DECEDENT arrived at the St. John's emergency room at 11:25 p.m. as a "Code Blue".

56.     When DECEDENT arrived at the emergency room at St. John's, he was in cardiopulmonary arrest.  The EMTs reported to the St. John's staff that there was a down-time of fifteen minutes prior to their arrival to the hospital.

57.     The physical examination of DECEDENT upon arrival at St. John's shows that he had no spontaneous pulse, no spontaneous blood pressure, and no spontaneous respiratory rate.  His pupils were dilated to 10 mm and were unreactive.

58.     Despite life-saving procedures taken at St. John's, DECEDENT was pronounced dead at 11:41 p.m. on June 23, 2012.

59.     DECEDENT was born on February 2, 1986, and was 26 years old at the time of his death.  DECEDENT was in good health at the time of his death and did not have any past problems with his heart.

60.     At no point during his interaction with Defendant OFFICERS did DECEDENT make any threatening statements, act violently toward others, or otherwise indicate that he posed a threat to the officers or others.

61.     DECEDENT was unarmed.

62.     At no point during his interaction with Defendant police officer did DECEDENT try to run away or flee from the officers.

63.     A review of DECEDENT'S corpse a day later indicated that DECEDENT'S nose had been broken as it was pushed completely to one side.  His right arm appeared either possibly dislocated or broken.  DECEDENT had prominent bruises and abrasions to the

frontal lobe, side and above his eyebrows.  He had indented areas on his face and on his body.  There were multiple bruises on his left arm and also his legs.  He had bruising on both sides of his abdomen.  His skull showed signs of indentations and possible fractures.

64.    On or about November 21, 2012, the Ventura County Medical Examiner ("Coroner") released a report on the probable cause and manner of death of DECEDENT. This report stated, in relevant part, that the cause of death was "[a]sphyxia from active prone restraint (restraint asphyxia)."  The contributing conditions listed were "[m]ethamphetamine and marijuana intoxication with agitation, delirium and hyperthermia; cardiac complications of restraint related stresses."  The manner of death is listed in the report as "Homicide". The report further stated that DECEDENT, "[w]hile intoxicated from swallowed bags of methamphetamine and marijuana, subject lost signs of life during a prone restraint by police officers; pronounced dead shortly thereafter."

65.    The Coroner's report further stated: "Verbal attempts by police to get cooperation and compliance for safe transport to the hospital were unsuccessful and a decision was made to try to handcuff DECEDENT to allow safe medical care and transport. *This ultimately became a situation of prone restraint during a struggle with application of compression force, handcuff and leg restraints that eventuated in loss of consciousness and a cardiopulmonary arrest that was not able to be reversed medically*."  (Emphasis added.)

///

///

16

## FIRST CLAIM FOR RELIEF

### Violation of Civil Rights: Use of Excessive and Deadly Force

### (42 U.S.C. § 1983/4th Amendment) (Survival Claim)

### Plaintiffs, as Alternative Successors in Interest of DECEDENT,

### Against Defendant OFFICERS and DOES 1-10

66.    Plaintiffs incorporate by reference and reallege paragraphs 1 through 65, as though set forth herein verbatim.

67.    Plaintiffs bring this cause of action under 42 U.S.C. § 1983, as alternative successors in interest of DECEDENT as against Defendant OFFICERS and DOES 1-10.

68.    Commencing at or about the aforementioned date and place, without cause or justification, and acting under color of law, Defendant OFFICERS and DOES 1-10 and each of them, intentionally and maliciously deprived DECEDENT of rights secured to him by the Fourth, and Fourteenth Amendments to the United States Constitution in that Defendant OFFICERS and DOES 1-10, subjected DECEDENT to unreasonable, unnecessary and excessive force even though no strong government interest compelled the need for the officers to use force, especially the use of deadly force, including but not limited to doing the following:

a.    Defendant OFFICERS and DOES 1-10 used deadly force even though DECEDENT had not committed a serious crime, was unarmed, and did not pose a threat of death or serious physical injury to the officers or to others;

b.    The force used was deadly because the beating and tasing by Defendant

17

OFFICERS of DECEDENT was reasonably likely to cause his death when applied under

the circumstances they were applied in DECEDENT'S case, as it did in DECEDENT'S

case;

c.        The force used was deadly because pressing weight on a person and applying a

choke hold on a person who was already struggling to breathe and in obvious pain and

was begging to get free to breath was reasonably likely to cause death, as it did in

DECEDENT'S case;

d.        Defendant OFFICERS and DOES 1-10 assaulted and battered

DECEDENT by grabbing throwing DECEDENT to the ground face first, tasing him,

getting on top of him, continuously pressing their body weight on him, beating him while

he was in a prone position, and choking him even though DECEDENT had not made any

aggressive moves that threatened officer safety;

e.        Defendant OFFICERS and DOES 1-10 continued to choke DECEDENT

and stayed on top of him ignoring his pleas that to stop hurting him and then hearing him

make sounds that indicated he was choking and which should have alerted all of the

Defendant OFFICERS and DOES 1-10 of the risk of causing respiratory distress;

f.        Defendant OFFICERS and DOES 1-10 delayed the necessary medical

treatment of DECEDENT by the EMTs while Defendant OFFICERS and DOES 1-10

were using their force on DECEDENT;

g.        Despite having more than sufficient time to do so, Defendant SENIOR OFFICER

RAMIREZ failed to intervene to prevent Defendant OFFICERS and DOES 1 through

10's continued use of excessive and deadly force against DECEDENT.  Defendant

Defendant SENIOR OFFICER RAMIREZ ignored DECEDENT'S repeated pleas that

they were hurting him and ignored the choking sounds.  Defendant SENIOR OFFICER

RAMIREZ instead assisted the other officers in continuing to use excessive and deadly

force including the beating, tasing, restraining and applying a choke-hold, and assisted the

officers as they continued to press their combined weight on DECEDENT;

h.      Defendant SENIOR OFFICER RAMIREZ further failed to intervene by not

instructing and not directing his subordinate officers to make sure DECEDENT could

breath;

I.      At all times during the events described herein, Defendant OFFICERS and DOES

1-10, assisted each other in performing the various actions described and lent their

physical presence and support and authority of their office to each other during the event;

and,

j.      At all times during the events described herein, Defendant OFFICERS and DOES

1 through 10 engaged in a conspiracy to cover up the excessive use of force, by among

other things, providing false and misleading reports to the EMTs and other medical

providers as to events leading up to DECEDENT'S death and the timing of those events;

and,

k.      At all times during the events described herein, Defendant OFFICERS and DOES

1 through 10 engaged in a conspiracy to cover up the excessive use of force, by among

other things, providing false and misleading police reports and statements pertaining to

19

the incident.

69.     The unreasonable use of deadly force by Defendant OFFICERS and DOES 1-10, deprived DECEDENT of his right to be secure in his person against unreasonable searches and seizures as guaranteed to DECEDENT under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

70.     As a direct and proximate result of Defendant OFFICERS' and DOES 1 through 10's wrongful conduct described hereinabove, DECEDENT suffered extreme pain and suffering and also the loss of his life.

71.     DECEDENT suffered special and general damages as allowable under federal law in an amount to be proven at trial.

72.     Plaintiffs are informed, believe and based thereon allege that, in engaging in the conduct alleged herein, Defendant OFFICERS and DOES 1-10 acted with the intent to injure, vex, annoy and harass DECEDENT, and subjected DECEDENT to cruel and unjust hardship in conscious disregard of his rights with the intention on the part of the Defendant OFFICERS and DOES 1-10 of thereby depriving DECEDENT of his liberty and legal rights and otherwise cause DECEDENT injury.

73.     As a result of the foregoing, Plaintiffs seek exemplary and punitive damages against  Defendant OFFICERS and DOES 1-10 on behalf of DECEDENT.

74.     Further, as a result of the foregoing, Plaintiffs seek an award of reasonable attorneys' fees and costs according to proof, pursuant to 42 U.S.C. §1988.

///

## SECOND CLAIM FOR RELIEF

### Violation of Civil Rights: Deliberate Indifference to Serious Medical Needs

### (42 U.S.C. § 1983/4th and 14th Amendment) (Survival Claim)

### Plaintiffs, as Alternative Successors in Interest of DECEDENT,

### Against Defendant OFFICERS and DOES 1-10

75.     Plaintiffs incorporate by reference and reallege paragraphs 1 through 65 and 67 through 74, as though set forth herein verbatim.

76.     Plaintiffs bring this cause of action under 42 U.S.C. § 1983, as alternative successors in interest of DECEDENT as against Defendant OFFICERS and DOES 1-10.

77.     This Count arises under 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendment to the United States Constitution.

78.     Directly preceding his death, DECEDENT was under the control of Defendant OFFICERS and DOES 1-10 and was unable to seek medical attention on his own. Defendant OFFICERS and DOES 1-10 knew or should have known that DECEDENT was in serious need of immediate medical attention after receiving the 911 call that DECEDENT had ingested an 8-ball of methamphetamine and was overdosing. Defendant OFFICERS and DOES 1-10 were obligated to take all reasonable measures under the circumstances to obtain prompt and/or immediate medical treatment for DECEDENT'S medical condition yet failed to do so.

79.     Defendant OFFICERS and DOES 1-10 acted with reckless disregard and conscience-shocking indifference to DECEDENT'S serious medical needs, rights and

safety by intentionally delaying necessary medical care.

80.     Defendant OFFICERS and DOES 1-10 also acted with reckless disregard and conscience-shocking indifference to DECEDENT'S serious medical needs, rights and safety by intentionally denying DECEDENT medical care consistent with the applicable standards of care.

81.     Defendant OFFICERS and DOES 1-10 knew that their actions and/or failures to act placed DECEDENT in substantial risk of serious harm.

82.     Defendant OFFICERS and DOES 1-10 knew that their actions and/or failures to act would cause DECEDENT to suffer extreme and horrific pain, physical injury and loss of life.

83.     In so acting and/or failing to act, Defendant OFFICERS and DOES 1-10 deprived DECEDENT of his clearly-established constitutional right to necessary medical care and treatment under the Fourteenth Amendment.

84.     DECEDENT'S injuries and death were a direct and proximate result of Defendant OFFICERS' and DOES 1-10's intentional, willful and callous disregard of his serious need for necessary medical treatment and caused unnecessary and wanton infliction of pain and physical injury on DECEDENT, resulting in severe pain, physical injury and death. These deprivations resulted in the violation of his rights under the Fourteenth Amendment of the United States Constitution.

85.     By authorizing, ratifying, and/or condoning the acts and omissions of their Co-Defendants, Defendants CITY, OPD and WILLIAMS and DOES 1-10 subjected

22

DECEDENT to unnecessary and wanton infliction of pain, physical injury and death, thereby violating his rights under the Fourteenth Amendment of the United States Constitution.

86.     The acts and omissions complained of herein by Defendant OFFICERS and DOES 1 through 10 were done pursuant to customs, policies, practices and/or procedures authorized, condoned, ratified and carried out by all Defendants that resulted in delayed or substandard medical care for the purposes of saving money at the risk of DECEDENT'S health, and/or for inflicting physical and mental abuse on DECEDENT as retribution and in furtherance of a policy of misuse of power over persons detained by OPD.

87.     Defendants CITY, OPD and WILLIAMS and DOES 1-10 acted with reckless disregard and deliberate and conscience-shocking indifference to DECEDENT'S serious medical needs, rights and safety by failing to properly screen, train, supervise, and/or discipline its personnel which resulted in DECEDENT'S needless suffering as set forth above.

88.     Defendants CITY, OPD and WILLIAMS and DOES 1-10 also acted with reckless disregard and conscience-shocking indifference to DECEDENT'S serious medical needs, rights and safety by intentionally setting customs, policies, practices and/or procedures at OPD in such a way as to cause Plaintiffs' injuries as set forth above.

89.     Plaintiffs are informed, believe and based thereon allege that, in engaging in the conduct alleged herein, Defendant OFFICERS and DOES 1-10 acted with the intent to

23

injure, vex, annoy and harass DECEDENT, and subjected DECEDENT to cruel and

unjust hardship in conscious disregard of his rights with the intention on the part of the

Defendant OFFICERS and DOES 1-10 of thereby depriving DECEDENT of his liberty

and legal rights and otherwise cause DECEDENT injury.

90.    As a result of the foregoing, Plaintiffs seek exemplary and punitive damages

against  Defendant OFFICERS and DOES 1-10 on behalf of DECEDENT.

### THIRD CLAIM FOR RELIEF

**Municipal Liability on DECEDENT'S 42 U.S.C. § 1983 Claims**

**(Deliberate Indifference Causing Constitutional Violations) (Survival Claim)**

**Plaintiffs, as Alternative Successors In Interest of DECEDENT, Against Defendants**

**CITY, OPD, WILLIAMS and DOES 1-10**

91.    Plaintiffs incorporate by reference and reallege paragraphs 1 through 65, 67

through 74 and 76 through 90, as though set forth herein verbatim.

92.    Plaintiffs bring this cause of action under 42 U.S.C. § 1983, as alternative

successors in interest of DECEDENT as against Defendants CITY, OPD, WILLIAMS

and DOES 1-10.

93.    Defendant OFFICERS' and DOES 1-10's violations of DECEDENT'S Fourth and

Fourteenth Amendment rights, including but not limited to his right to be free from

excessive and deadly use of force, as set forth herein, were the direct and proximate

results of Defendants' maintaining longstanding customs, policies, practices and/or

procedures which tolerate and condone Defendant OFFICERS' and DOES 1-10's

1  violations, set forth herein.

2  94.    These longstanding customs, policies, practices and/or procedures, include, but are

3  not limited to, Defendants' standard operating procedures as well as accepted practices.

4

5  95.    Said customs, policies, practices and/or procedures include, *inter alia*: an ongoing

6  pattern of condoning and having a deliberate indifference towards citizens' constitutional

7  rights in connection with the following acts committed by OPD officers: (1) the use of

8  excessive force or violence, including but not limited to the use of tactics and weapons,

9

10  including tasers, and the use of physical restraints, in a reckless and unreasonable manner;

11  (2) unconstitutional seizures and deprivations of liberty; (3) the conforming of false

12

13  testimony, evidence or reports by all officers involved in an incident to protect one or

14  more of them from criminal prosecution or administrative discipline; (4) the performance

15  of sham or deficient investigations of allegations of officer misconduct designed to allow

16

17  officers' misconduct to escape detection by superiors and/or superiors who guide or shape

18  the investigation to support a result exonerating the involved officers; and (5) the planting

19  of evidence or withholding evidence to favor the involved officers' version of a disputed

20

21  and complained of incident of police misconduct.

22  96.    Said customs, policies, practices and/or procedures include, *inter alia*: an ongoing

23  pattern of condoning and having a deliberate indifference towards citizens' constitutional

24  rights in connection with the following acts committed by OPD and CITY: (1) the

25  ratification of misconduct to avoid referral for criminal prosecution, and (2) the public

26  denial or minimization of rampant problems of dishonesty and brutality within the OPD.

27

28

97.     The policy maker for the officers of CITY at the time of the incident was Defendant WILLIAMS.  As such, she had the duty to make and maintain customs, policies, practices and/or procedures which address and cure the problems of use of excessive force committed by OPD officers in general.  Rather than creating or maintaining such customs, policies, practices and/or procedures, Defendant WILLIAMS created an unreasonable risk of harm to DECEDENT by condoning and having a deliberate indifference towards citizens' constitutional rights in connection with excessive use of force, unreasonable seizure and the deprivation of liberty by OPD officers, in particular, Defendant OFFICERS and DOES 1-10.

98.     The above described customs, policies, practices and/or procedures demonstrates a deliberate indifference on the part of the policy makers of CITY to the constitutional rights of persons within CITY and were a moving force behind the violations of DECEDENT'S rights alleged herein.

99.     The within described actions of Defendant OFFICERS were a direct and proximate cause of the constitutional injuries suffered by DECEDENT.

100.    Defendants CITY, OPD and WILLIAMS expressly or tacitly encouraged, ratified, and/or approved of the acts and/or omissions of the Defendant OFFICERS alleged herein, and knew that such conduct was unjustified and would result in violations of DECEDENT'S constitutional rights.

101.    As a result of the foregoing, DECEDENT was subjected to physical and emotional injuries that was a direct and proximate result of Defendants' customs, policies, practices

or procedures.

## FOURTH CLAIM FOR RELIEF

**Municipal Liability on DECEDENT'S 42 U.S.C. § 1983 Claims**

**(Failure to Screen, Train, Supervise and Reprimand**

**Causing Constitutional Violations) (Survival Claim)**

**Plaintiffs, as Alternative Successors In Interest of DECEDENT, Against Defendants**

**CITY, OPD, WILLIAMS and DOES 1-10**

102.   Plaintiffs incorporate by reference and reallege paragraphs 1 through 65, 67 through 74, 76 through 90 and 92 through 101, as though set forth herein verbatim.

103.   Plaintiffs bring this cause of action under 42 U.S.C. § 1983, as alternative successors in interest of DECEDENT as against Defendants CITY, OPD, WILLIAMS and DOES 1-10.

104.   Plaintiffs are informed, believe and based thereon allege that Defendants CITY, OPD, WILLIAMS and DOES 1-10 knew, or in the exercise of reasonable care should have known prior to June 23, 2012, that OPD officers, including Defendant OFFICERS and DOES 1-10, were engaging in acts of: (1) the use of excessive force or violence, including but not limited to the use of tactics and weapons, including tasers, and use of physical restraints in a reckless and unreasonable manner; (2) unconstitutional seizures and deprivations of liberty; (3) abuse of process as protected by the Fourth Amendment, (3) malicious prosecution as protected by the Fourth Amendment, and (4) conspiring to falsify evidence of the crimes of resisting arrest and/or battery on a police officer and

thereafter prosecuting individuals under similar circumstances as DECEDENT in violation of his rights protected under the Fourth and Fourteenth Amendments, (5) the conforming of false testimony, evidence or reports by all officers involved in an incident to protect one or more of them from criminal prosecution or administrative discipline; (6) the performance of sham or deficient investigations of allegations of officer misconduct designed to allow officers' misconduct to escape detection by superiors and/or superiors who guide or shape the investigation to support a result exonerating the subject or target officers; and (7) the planting of evidence or withholding evidence to favor the involved officers' version of a disputed and complained of incident of police misconduct.

105.    Plaintiffs are informed, believe and based thereon allege that Defendants CITY, OPD, WILLIAMS and DOES 1-10 knew, or in the exercise of reasonable care should have known prior to June 23, 2012, that OPD officers, including Defendant OFFICERS and DOES 1-10, had a history, propensity, pattern and practice of adhering to the unlawful and unconstitutional police actions described herein and above.

106.    Plaintiffs are informed, believe and based thereon allege that Defendant OFFICERS and DOES 1-10 were the subject of prior complaints of allegations of similar conduct, had been the subject of administrative proceedings and had also been defendants in federal and state courts wherein other plaintiffs alleged violations of constitutional rights by Defendants in the course and scope of their employment as OPD officers and under color of law.

107.    Notwithstanding this information and the history of OPD officers including

28

Defendant OFFICERS and DOES 1-10, Plaintiffs are informed, believe and based thereon allege that Defendants CITY, OPD, WILLIAMS, and DOES 1-10 failed to properly screen applicants and hired persons who were psychologically unfit for duty, used unreasonable police tactics which lead to the constitutional violations of DECEDENT'S constitutional rights as alleged herein and above.

108.   Plaintiffs are informed, believe and based thereon allege that Defendants CITY, OPD, WILLIAMS and DOES 1-10 generally failed to train and supervise OPD officers, including Defendant OFFICERS and DOES 1-10, in order to halt and prevent the type of conduct which resulted in violating DECEDENT'S constitutional rights.

109.   Plaintiffs are informed, believe and based thereon allege that Defendant Defendants CITY, OPD, WILLIAMS and DOES 1-10 have customs, policies or practices which reject and ignore misconduct of OPD officers and fail to impose discipline.  As a result, the custom, practice or policy results in the retention of officers such as Defendant OFFICERS and DOES 1-10 who have a propensity to cause constitutional violations such as use of excessive force, unreasonable seizure, liberty deprivations and falsification of evidence.  This failure to discipline condones, ratifies, promotes and perpetuates OPD officers' misconduct and their "code of silence" and was a moving force behind the violations of DECEDENT'S constitutional rights.

110.   The policy maker and supervisor for the officers of CITY at the time of the incident was Defendant WILLIAMS.  As such, she had the duty to hire, train, supervise and discipline OPD officers who use cause constitutional violations.  Defendant

WILLIAMS created an unreasonable risk of harm to DECEDENT by failing to adequately hire, train, supervise and discipline OPD officers, in particular, Defendant OFFICERS and DOES 1-10.

111.   Plaintiffs are informed, believe and based thereon allege that Defendants CITY, OPD, WILLIAMS and DOES 1-10 expressly or tacitly encouraged, ratified, and/or approved of the acts and/or omissions alleged herein, and knew that such conduct was unjustified and would result in violations of DECEDENT'S constitutional rights.

112.   As a result of the foregoing, DECEDENT was subjected to physical and emotional injuries that were a direct and proximate result of Defendants' failure to maintain customs, policies, practices or procedures to adequately hire, train, supervise and discipline OPD officers.

**FIFTH CLAIM FOR RELIEF**

**Assault (Survival Claim)**

**Plaintiffs, as Alternative Successors In Interest of DECEDENT,**

**Against All Defendants and DOES**

113.   Plaintiffs incorporate by reference and reallege paragraphs 1 through 65, 67 through 74, 76 through 90, 92 through 101 and 103 through 112, as though set forth herein verbatim.

114.   Plaintiffs, as alternative successors in interest of DECEDENT, bring this cause of action as against all Defendants and DOES.

115.   The conduct of Defendant OFFICERS and DOES 1-10 caused DECEDENT to

reasonably believe that he was about to be touched in a harmful and/or offensive manner.

116.   DECEDENT did not consent to the conduct of any Defendant.

117.   DECEDENT was harmed by the conduct of Defendant OFFICERS and DOES 1-10.

118.   Plaintiffs are informed, believe, and based thereon allege that in engaging in the conduct alleged herein, Defendant OFFICERS and DOES 1-10 acted with the intent to injure, vex, annoy and harass DECEDENT, and subjected DECEDENT to cruel and unjust hardship in conscious disregard of DECEDENT' rights with the intention of causing DECEDENT injury and depriving him of his constitutional rights.

119.   As a result of the foregoing, DECEDENT seeks exemplary and punitive damages against Defendant OFFICERS and DOES 1-10.

120.   Defendants CITY, OPD, WILLIAMS and DOES 1-10 are liable under Cal. Government Code § 815.2(a) and the doctrine of *respondeat superior* for the wrongful actions of their employees and agents, including but not limited to Defendant OFFICERS and DOES 1-10.

///

///

///

///

///

///

## SIXTH CLAIM FOR RELIEF

### Battery (Survival Claim)

**Plaintiffs, as Alternative Successors In Interest of DECEDENT,**

**Against All Defendants and DOES**

121.   Plaintiffs incorporate by reference and reallege paragraphs 1 through 65, 67 through 74, 76 through 90, 92 through 101, 103 through 112 and 114 through 120, as though set forth herein verbatim.

122.   Plaintiffs, as alternative successors in interest of DECEDENT, bring this cause of action as against all Defendants and DOES.

123.   Defendant OFFICERS and DOES 1-10 intentionally performed acts that resulted in harmful and/or offensive contacts with DECEDENT'S person.

124.   Defendant OFFICERS and DOES 1-10 harmful and/or offensive contact caused injury, damage, loss and harm to DECEDENT.

125.   Plaintiffs are informed, believe, and based thereon allege that in engaging in the conduct alleged herein, Defendant OFFICERS and DOES 1-10 acted with the intent to injure, vex, annoy and harass DECEDENT, and subjected DECEDENT to cruel and unjust hardship in conscious disregard of DECEDENT' rights with the intention of causing DECEDENT injury and depriving him of his constitutional rights.

126.   As a result of the foregoing, DECEDENT seeks exemplary and punitive damages against Defendant OFFICERS and DOES 1-10.

127.   Defendant CITY, OPD, WILLIAMS and DOES 1-10 are liable under Cal.

Government Code § 815.2(a) and the doctrine of *respondeat superior* for the wrongful

actions of their employees and agents, including but not limited to Defendant OFFICERS

and DOES 1-10.

### SEVENTH CLAIM FOR RELIEF

**Violation of Civil Rights: State Interference with Familial Relationship**

**(42 U.S.C. § 1983/14th Amendment) (Individual Claim)**

**Plaintiffs, as Individuals, Against Defendant OFFICERS and DOES**

128.   Plaintiffs incorporate by reference and reallege paragraphs 1 through 65, 67

through 74, 76 through 90, 92 through 101, 103 through 112, 114 through 120 and 122

through 127, as though set forth herein verbatim.

129.   Plaintiffs have a cognizable interest under the Substantive Due Process Clause of

the Fourteenth Amendment of the United States Constitution to be free from state actions

that deprive them of life, liberty or property in such a manner as to shock the conscience,

including but not limited to, unwarranted state interference in Plaintiffs' familial

relationships with DECEDENT.

130.   As a result of the excessive and deadly force and wanton and callous disregard of

Plaintiffs' obvious and known serious medical needs by Defendant OFFICERS and

DOES 1-10, DECEDENT died. Defendants interfered with and permanently deprived

Plaintiffs of their constitutional rights to a familial relationship with DECEDENT.

131.   As a further legal result of the aforesaid acts and omissions by Defendants and

DECEDENT'S resulting death, Plaintiffs have incurred funeral and burial expenses in an

33

amount according to proof.

132.   Defendant OFFICERS' and DOES 1-10's actions, along with other undiscovered conduct, shock the conscience, and they acted with conscious and deliberate indifference to Plaintiffs' constitutional rights, and with the purpose of depriving them of such rights, unrelated to any legitimate law enforcement objective.

133.   Defendant OFFICERS and DOES 1-10, and each of them, committed the aforementioned acts and omissions knowingly, willfully and maliciously, and with the intent to harm, injure, vex, harass and oppress Plaintiffs with conscious disregard of their known rights and by reasons thereof, Plaintiffs seek punitive and exemplary damages from Defendant OFFICERS and DOES 1-10 in an amount according to proof.

**EIGHTH CLAIM FOR RELIEF**

**Municipal Liability on Plaintiffs' 42 U.S.C. § 1983 Claims**

**(Deliberate Indifference Causing Constitutional Violations) (Individual Claim)**

**Plaintiffs, as Individuals, Against**

**Defendants CITY, OPD, WILLIAMS and DOES 1-10**

134.   Plaintiffs incorporate by reference and reallege paragraphs 1 through 65, 67 through 74, 76 through 90, 92 through 101, 103 through 112, 114 through 120, 122 through 127 and 129 through 133, as though set forth herein verbatim.

135.   Plaintiffs bring this cause of action as individuals under 42 U.S.C. § 1983, as against Defendants CITY, OPD, WILLIAMS and DOES 1-10.

136.   Defendant OFFICERS' and DOES 1-10's violations of Plaintiffs' Fourteenth

Amendment substantive due process rights to a familial relationship with DECEDENT, as set forth herein, were the direct and proximate results of Defendants' tolerating and maintaining longstanding customs, policies, practices and/or procedures, set forth hereinbelow.

137.    These longstanding customs, policies, practices and/or procedures, include, but are not limited to, Defendants' standard operating procedures.

138.    Said customs, policies, practices and/or procedures include, *inter alia*: an ongoing pattern of condoning and having a deliberate indifference towards citizens' constitutional rights in connection with their familial relationships.

139.    The policy maker for the officers of CITY at the time of the incident was Defendant WILLIAMS. As such, she had the duty to make and maintain customs, policies, practices and/or procedures which address and cure the problems of the unconstitutional deprivation of substantive due process rights of parents to direct the care of their children and protect their children.  Rather than making and maintaining these customs, policies, practices and/or procedures, Defendant WILLIAMS created an unreasonable risk of harm to DECEDENT by having a deliberate indifference toward citizens' constitutional substantive due process rights and by condoning acts committed and omitted by CITY and OFFICERS in regard to said parental rights, in particular, Defendants WILLIAMS and DOES 1-10.

140.    The above described customs, policies, practices and/or procedures demonstrates a deliberate indifference on the part of the policy makers of the CITY of Oxnard to the

35

constitutional rights of persons within the CITY of Oxnard and were the cause of the violations of DECEDENT's rights alleged herein.

141.   Defendants CITY, OPD and WILLIAMS expressly or tacitly encouraged, ratified, and/or approved of the acts and/or omissions of the Defendant officers alleged herein, and knew that such conduct was unjustified and would result in violations of DECEDENT's constitutional rights.

142.   The within described actions of Defendant OFFICERS were a direct and proximate cause of the constitutional injuries suffered by DECEDENT.

143.   As a result of the foregoing, DECEDENT was subjected to pain and suffering that was a direct and proximate result of Defendants' customs, policies, practices or procedures.

<u>NINTH CLAIM FOR RELIEF</u>

**Municipal Liability on Plaintiffs' 42 U.S.C. § 1983 Claims**

**(Failure to Screen, Train, Supervise and Reprimand Causing Constitutional**

**Violations) (Individual Claim)**

**Plaintiffs, as Individuals, Against**

**Defendants CITY, OPD, WILLIAMS and DOES 1-10**

144.   Plaintiffs incorporate by reference and reallege paragraphs 1 through 65, 67 through 74, 76 through 90, 92 through 101, 103 through 112, 114 through 120, 122 through 127, 129 through 133 and 136 through 143, as though set forth herein verbatim.

145.   Plaintiffs bring this cause of action as individuals under 42 U.S.C. § 1983, as

36

1    against Defendants CITY, OPD, WILLIAMS and DOES 1-10 .

2    146.   Defendant OFFICERS' and DOES 1-10's violations of Plaintiffs' Fourteenth

3
4    Amendment substantive due process rights to a familial relationship with DECEDENT, as

5    set forth herein, were the direct and proximate results of Defendants'

6    147.   Plaintiffs had Fourteenth Amendment substantive due process rights to a familial
7
8    relationship with DECEDENT.  Plaintiffs are informed, believe and based thereon allege

9    that Defendants CITY, OPD, WILLIAMS and DOES 1-10 knew, or in the exercise of

10   reasonable care should have known, that Defendant OFFICERS and DOES 1-10 and
11
12   other OPD officers had a history, propensity and pattern, prior to and after the time that

13   Plaintiffs were the victim of substantive due process violations committed, to use

14   unreasonable police tactics which lead to the unconstitutional deprivations suffered.
15
16   148.   Plaintiffs are informed, believe and based thereon allege that Defendants CITY,

17   OPD, WILLIAMS and DOES 1-10 knew, or in the exercise of reasonable care should

18   have known, that Defendant OFFICERS and DOES 1-10 and other OPD officers were
19
20   responsible for unconstitutionally depriving individuals of their substantive due process

21   rights to a familial relationship.

22   149.   Plaintiffs are informed, believe and based thereon allege that Defendant
23
24   OFFICERS and DOES 1-10 were the subject of prior complaints of allegations of similar

25   conduct, had been the subject of administrative proceedings and had also been defendants

26   in federal and state courts wherein other plaintiffs alleged violations of constitutional
27
28   rights by Defendants in the course and scope of their employment as OPD officers and

1   under color of law.

2   150.   Notwithstanding this information and the history of Defendant OFFICERS and

3   DOES 1-10 and other OPD officers, Plaintiffs are informed, believe and based thereon

4   allege that Defendants CITY, OPD, WILLIAMS, and DOES 1-10 failed to properly

5   screen applicants and hired persons who were psychologically unfit for duty and used

6   unreasonable police tactics which lead to the unnecessary and unreasonable

7   unconstitutional deprivation of parents' substantive due process rights to direct the care of

8   their children and protect their children.

9   151.   Plaintiffs are informed, believe and based thereon allege that Defendants CITY,

10   OPD, WILLIAMS and DOES 1-10 generally failed to train and supervise Defendant

11   OFFICERS and DOES 1-10 and other OPD officers to halt and prevent the type of

12   conduct which resulted in violating DECEDENT's constitutional rights.

13   152.   Plaintiffs are informed, believe and based thereon allege that Defendants CITY,

14   OPD, WILLIAMS and DOES 1-10 have customs, policies or practices which reject and

15   ignore the prior misconduct of an officer in imposing discipline.  As a result, the custom,

16   practice or policy results in the retention of officers such as Defendant OFFICERS and

17   DOES 1-10 and other OPD officers who have a propensity to commit said constitutional

18   rights violations.  This condones, ratifies, promotes and perpetuates the officers

19   misconduct and "code of silence" and was a moving force in the violations of Plaintiffs'

20   constitutional rights.

21   153.   The policy maker and supervisor for the officers of CITY at the time of the

38

1    incident was Defendant WILLIAMS. As such, she has the duty to supervise, train and

2    reprimand OPD officers who unconstitutionally deprive individuals of their substantive

3    due process.  Defendant WILLIAMS created an unreasonable risk of harm to

4    DECEDENT by failing to adequately supervise, control or otherwise monitor the

5    activities of his officers, in particular,  Defendant OFFICERS and DOES 1-10 and other

6    OPD officers.

7    154.    Plaintiffs are informed, believe and based thereon allege that rather than

8

9

10   adequately train, supervise and reprimand the Defendant officers, Defendants CITY, OPD

11   and WILLIAMS condoned, tolerated and tacitly approved of  Defendant OFFICERS' and

12   DOES 1-10's and other OPD officers' unconstitutionally deprivations of Plaintiffs'

13

14   substantive due process rights.

15   155.    Plaintiffs are informed, believe and based thereon allege that Defendants CITY,

16   OPD, WILLIAMS and DOES 1-10 expressly or tacitly encouraged, ratified, and/or

17

18   approved of the acts and/or omissions alleged herein, and knew that such conduct was

19   unjustified and would result in violations of Plaintiffs' constitutional rights.

20

21   156.    As a result of the foregoing, Plaintiffs were subjected to pain and suffering that

22   was a direct and proximate result of Defendants' customs, policies, practices or

23   procedures.

24   ///

25   ///

26   ///

27   ///

28

## TENTH CLAIM FOR RELIEF

### Wrongful Death

### Code of Civil Procedure §§ 377.60 and 377.61(Individual Claim)

### Plaintiffs, as Individuals, Against All Defendants and DOES

157.   Plaintiffs incorporate by reference and reallege paragraphs 1 through 65, 67 through 74, 76 through 90, 92 through 101, 103 through 112, 114 through 120, 122 through 127, 129 through 133, 136 through 143 and 145 through 156, as though set forth herein verbatim.

158.   Pursuant to *California Code of Civil Procedure* sections 377.60 and 377.61, Plaintiffs have brought this action against, and claim damages from, said Defendants for the wrongful death of DECEDENT.  At all times material, Plaintiffs TERESA and GUILLERMO RAMIREZ were the natural parents of DECEDENT and DECEDENT'S heirs at law.  At all times material, Plaintiff R.R. was the issue of DECEDENT and DECEDENT'S heir at law.

159.   At or about the aforementioned time, date and place, Defendant OFFICERS and DOES 1-10 intentionally, negligently and recklessly assaulted, battered, beat and tased Plaintiffs' son, thereby causing his wrongful death.

160.   On and for some time before June 23, 2012, Defendants CITY, OPD, WILLIAMS and DOES 1-10, employed, retained, trained, supervised, assigned, controlled Defendant OFFICERS and DOES 1-10, who Defendants CITY, OPD, WILLIAMS and DOES 1-10, and each of them, at all times material herein, knew or reasonably should have known had

40

dangerous and dishonest propensities for abusing their authority and for using excessive and punitive force and violence and for falsifying their accounts and reports of their actions, especially where force was used by said Defendant OFFICERS. Defendants CITY, OPD, WILLIAMS and DOES 1-10 are vicariously liable for the acts of Defendant OFFICERS and DOES 1-10 committed in the course and scope of their employment as Oxnard police officers.

161.   By reason of the aforesaid acts and omissions of Defendants, Plaintiffs have been and will forever be deprived of DECEDENT'S love, affection, society, companionship, and support, all to Plaintiffs' damages according to proof at trial.

162.   As a further legal result of the aforesaid acts and omissions by Defendants and the death of DECEDENT, Plaintiffs have incurred funeral and burial expenses in an amount according to proof.

163.   Plaintiffs further allege that medical treatment was recklessly and/or negligently delayed to DECEDENT, while he was in Defendants' custody which may have caused, contributed to or hastened his death.

164.   As a further direct and legal result of the battery, negligence, and/or recklessness of Defendants, and each of them, Plaintiffs have incurred damages to be shown according to proof at the time of trial, including but not limited to damages for comfort, society, love, affection, joy, comfort, companionship and support, as well as funeral and medical expenses and legal expense herein.

///

41

## PRAYER FOR RELIEF

Wherefore, Plaintiffs pray for judgment against Defendants, and each of them, as follows:

**On the First, Second, Third and Fourth Claims for Relief:**

1.    For general damages according to proof at trial;

2.    For special damages according to proof at trial;

3.    For an award of punitive damages against Defendant OFFICERS and DOES 1-10;

**On the Fifth and Sixth Claims for Relief:**

4.    For an award of damages sustained by DECEDENT before death and punitive damages DECEDENT would have been entitled to had he lived, and excluding damages for pain, suffering and hedonic damages;

**On the Seventh, Eighth, and Ninth Claims for Relief:**

5.    For general damages according to proof at trial;

6.    For special damages according to proof at trial;

7.    For an award of punitive damages against Defendant OFFICERS and DOES 1-10;

**On the Tenth Claim for Relief:**

8.    For pecuniary losses caused by DECEDENT'S death, including but not limited to pecuniary support DECEDENT would have provided, and non-economic damages for being deprived of the DECEDENT'S society and comfort;

**On All Claims for Relief:**

9.    For declaratory and injunctive relief preventing similar future harm;

10.     For attorney's fees and costs under 42 U.S.C. § 1988, C.C.P. § 1021.5, or under any other applicable statutes or law;

11.     For an award of Plaintiffs' costs of suit incurred herein;

12.     For an award of any applicable statutory penalties;

13.     For an award of any applicable interest amounts; and

14.     For any other relief the Court deems appropriate.


Dated: July 19, 2013          LAW OFFICES OF BRIAN A. VOGEL, PC

By: _____
       BRIAN A. VOGEL
       Attorney for Plaintiff R.R., by and through his
       Guardian Ad Litem and Mother, LUCINA
       GARCIA

Dated: July 19, 2013          BAMIEH & ERICKSON, PLC


By: _____
       DAVID RING
       Attorney for Plaintiffs GUILLERMO
       RAMIREZ and TERESA RAMIREZ

///

///

///

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial.

Dated: July _19_ 2013                LAW OFFICES OF BRIAN A. VOGEL, PC


By: _____
      BRIAN A. VOGEL
      Attorney for Plaintiff R.R., by and through his
      Guardian Ad Litem and Mother, LUCINA
      GARCIA

Dated: July _19_, 2013               BAMIEH & ERICKSON, PLC


By: _____
      DAVID RING
      Attorney for Plaintiffs GUILLERMO
      RAMIREZ and TERESA RAMIREZ

44

BRIAN A. VOGEL (SBN 167413)
THE LAW OFFICES OF BRIAN A. VOGEL, PC
770 County Square Dr., Ste. 104
Ventura, CA 93003
Phone: (805) 654-0400

RON BAMIEH (SBN 159413)
BAMIEH & ERICKSON, PLC
692 E. Thompson Blvd.
Ventura, CA 93001
Phone: (805) 643-5555

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GUILLERMO RAMIREZ, an individual and successor-in-interest to ROBERT RAMIREZ, deceased; TERESA RAMIREZ, an individual and successor-in-interest to ROBERT RAMIREZ, deceased; R..R., [name redacted] an individual and successor-in-interest to ROBERT RAMIREZ, deceased, by and through his Guardian Ad Litem and Mother, LUCINA GARCIA,<br><br>                       Plaintiff(s)<br>v.<br>OXNARD POLICE DEPARTMENT, CITY OF OXNARD, CHIEF JERI WILLIAMS, an individual, STEVEN RAMIREZ, an individual, MICHAEL BOCANEGRA, an individual, ROSLYNN WILFERT, an individual, PEDRO RODRIGUEZ, an individual, AARON ZAVALA, an individual, KYLE BRANTNER, an individual,  MATTHEW ROSS, an individual, and DOES 1-10, inclusive,<br><br>                      Defendant(s). | CASE NUMBER<br><br>CV13-1615-MWF(ANx)<br><br><br><br><br><br><br><br>**AMENDED SUMMONS** |

TO:   OXNARD POLICE DEPARTMENT; CITY OF OXNARD; CHIEF JERI WILLIAMS; STEVEN RAMIREZ; MICHAEL BOCANEGRA; ROSLYNN WILFERT; PEDRO RODRIGUEZ; AARON ZAVALA; KYLE BRANTNER; MATTHEW ROSS; and DOES 1-10, inclusive

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☐ complaint ☒ Second  amended complaint ☐counterclaim ☐cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiffs' attorneys, Brian A. Vogel, Law Offices of Brian A. Vogel, PC, whose address is 770 County Square Drive, Suite 104, Ventura, CA 93003 and Ron Bamieh, Bamieh & Erickson, PLC, 692 E. Thompson Blvd., Ventura, CA 93001 . If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

JUL 2 2 2013

Dated: By:_____

Clerk, U.S. District Court

ANDRES PEDRO
Deputy Clerk

By:_____

(Seal of the Court)

1202

[Use 60 days if the defendant is the United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].