# EXHIBIT A

CURTIS J. COPE / CONSULTANT
8531 PALERMO DRIVE
HUNTINGTON BEACH, CA 92646-2626
714-962-1931

## EXPERT WITNESS DECLARATION

**RAMIREZ V OXNARD POLICE DEPARTMENT**
**USDC CASE # CV 13-01615 MWF**

**It is my understanding discovery is still in progress in this case. As such, I reserve the right to add, alter, amend, delete, or revise any opinions as new information is provided.**

1)      My full and complete name is CURTIS JEFFREY COPE. I am currently a resident of Orange County in Southern California where I maintain my consulting firm and business office.

2)      I am a retired police officer (effective 10-30-97), attaining the rank of Lieutenant for the City of Huntington Beach, California. In addition to my former law enforcement duties, I am also active in the fields of training as an instructor, developer, lecturer, author and consultant. I started in my career as a police officer in 1968 and worked in that field until retirement. I held the rank of Police Officer for approximately nine years, another thirteen years as a Sergeant, and finished my career at the rank of Lieutenant for approximately 7 ½ years. Some of the assignments that I have worked were Patrol Officer, Motor Officer, Field Training Officer, SWAT Officer, Special Enforcement Unit Officer, Helicopter Observer, Background Investigator, Patrol Sergeant, FTO Supervisor, SWAT Supervisor, Motor Sergeant, Accident Investigation Sergeant, Special Enforcement /Gang Detail Sergeant, Watch Commander, SWAT Commander, COP Area Commander and General Investigation Bureau Commander. Throughout my career I was the lead arrest and control instructor for the department. For approximately half of my active law enforcement career I was vested with planning and writing the operations orders for all of the major special events that occurred in the City. I also worked with other City Departments in developing the Conditional Use Permits for events or businesses operating within the City. These events included 4th of July Parades & Fireworks Celebrations, Surfing Contests, Annual Church, Vietnamese Tet Festivals and others. Typically, the 4th of July activities required assigning and coordinating the Department's police activities, staffing issues plus coordinating allied agencies that assisted in the events. I have participated or supervised in the writing and service of in excess of 100 search warrants. I have conducted in excess of thirty internal affairs investigations. I received in excess of 125 official commendations or awards through my career.

1

3)      I obtained my first teaching certificate from the California Commission on Peace Officer Standards and Training (P.O.S.T.) in 1970. I began teaching Department personnel arrest and control techniques upon completion of the instructor's course. I started on staff as an Instructor at the Criminal Justice Training Center at Golden West College in Huntington Beach in 1975. I have taught subjects in arrest and control, defense tactics, baton, use of force, patrol procedures, traffic stops, traffic accident investigation, report writing, S.W.A.T. Operations, Gang Awareness and other law enforcement related topics. I am a certified Master Instructor by the State of California Commission on Peace Officers Standards and Training (POST). I was granted a Lifetime California Department of Education Teaching Credential, Community College level, in 1976, which certifies me to teach and train law enforcement personnel at Colleges and POST Commission approved training facilities. I am a consultant for POST in the Robert Presley Institute of Criminal Investigation, Instructor Update Course, where I provide training for law enforcement personnel in how to develop training and teaching techniques. I also have acted as a consultant for POST in course and curricula development, mentoring, recommended training changes, assisted in tele-course productions and training procedures. In November of 1997, I was requested by POST to accept a position as Program Administrator in the Institute of Criminal Investigation Instructor Development Workshop Series. My position was to administer instruction, management of existing programs, and developing new training material or new training programs for all instructors teaching within the Institute. **I was awarded the Excellence in Instruction Award for the years of 2000 –2001 by the Institute. In 2006 I was awarded the Institute's Founders Award for Leadership in Instructional Excellence. I was awarded the Mentoring Excellence Award, California POST Instructor Symposium, 2009. I was awarded the Award of Excellence for Redesigning the Institute of Criminal Investigation Instructor Development Course, 2010 & 2011. I was awarded a Certificate of Excellence for outstanding work and dedication to the Instructor Development Institute – Mentor Program in 2013.** I was certified as a T.A.S.E.R. instructor by Taser International in 2008. I presently continue teaching in the ICII program, other POST courses and also provide training for law enforcement making presentations for local, state, federal and international personnel on a variety of topics. I also continue training in the field on a regular basis to keep abreast with issues facing law enforcement. I have trained over 15,000 police personnel.

4)      I have attached and incorporate by reference my Professional Resume to establish my background, training, and experience within the law enforcement field as well as my formal education, teaching credentials, assignments and tactical police command experience.

5)      I have published a text book on the subject of weaponless control entitled, **Weaponless Control for Police and Security Guard Personnel**, publisher C. Charles Thomas, Springfield, IL, 1979. I submitted my Master Instructor's thesis,

2

**Arrest and Control Techniques Student Syllabus for Instructors**, to POST in 1993, who authorized its publication. It has been used for student development at basic police academies, reserve academies, Basic State Investigators Academy, Instructor Development Course and others, plus it is used as resource material at POST headquarters. I have also published twenty-five articles. The first is entitled **Documenting the Use of Force**, published in the Journal of California Law Enforcement, Volume 30, Number 1, March 1996. The second is entitled **Five-Step Method To Regional Crime Analysis**, published in The Police Chief Magazine, May 1998. The third is entitled **California Investigator Training**. It was published by the American Society of Law Enforcement Trainers in their magazine The Law Enforcement Trainer, January / February 1999. The fourth is entitled **A Trainer's Perspective**. It was published by The Follow-up, a training newsletter for California Law Enforcement Investigators, Robert Presley Institute of Criminal Investigation, Commission on Peace Officers Standards & Training, Volume 4, Number 2, October, 1999. The fifth is **Report Writing Review A Supervisor's Mandate**, The Law Enforcement Trainer, The Journal of the American Society of Law Enforcement Trainers, Volume 17, Number 8 May/June, 2002. The sixth article is **Building Training from Lessons Learned – A Checklist to Successful Training**, The Journal of California Law Enforcement, California Peace Officer's Association, Volume 37, Number 1, 2003. The seventh article is **Course Development: How Long Should It Take**, The Law Enforcement Trainer, The Journal of the American Society for Law Enforcement Trainers, Volume 18, Number 6 November/December 2003. The eighth article is **Using Forensic Equipment to Enhance Use of Force Investigations**, Journal of California Law Enforcement, Volume 39, Number 3, 2005. The ninth article is **Enhancing Use of Force Training**, Illinois Law Enforcement Training & Standards Board Executive Institute FORUM, Volume 7, Number 3, March / 2007 and Law Officer Magazine, Volume 3, Issue 6, June 2007. The tenth article is **A Guide To Life After Law Enforcement**, LawOfficer.com, May 30, 2008. The eleventh article is **What Is The Standard On Use Of Force**, LawOfficer.com, July 29, 2008. Article number twelve is, **Understanding the Objectively Reasonable Standard**, LawOfficer.com, September 30, 2008. Article number thirteen is **Applying the Objectively Reasonable Standard**, LawOfficer.com, October 30, 2008. Article number fourteen is **Understanding the Objectively Reasonable Standard: Self Defense**, LawOfficer.com, December 29, 2008. The fifteenth article is **Understanding the Objectively Reasonable Standard: Defense of Others**, LawOfficer.com, January 2, 2009. The sixteenth article is **Understanding the Objectively Reasonable Standard: Effectuating An Arrest**, LawOfficer.com, January 26, 2009. The seventeenth article is **Understanding the Objectively Reasonable Standard: Prevent an Escape**, LawOfficer.com, March 30, 2009. The eighteenth article is **Understanding the Objectively Reasonable Standard: Overcome Resistance – Part One**, LawOfficer.com, June 17, 2009. The nineteenth article is **Understanding the Objectively Reasonable Standard: Overcome Resistance – Part Two**, LawOfficer.com, September 2, 2009. The twentieth article is **Understanding the Objectively Reasonable**

Standard: Overcome Resistance – Part Three, LawOfficer.com, September 23, 2009.  The twenty-first article is **Understanding the Objectively Reasonable Standard – Taser: Objectively Reasonable Force,** LawOfficer.com, November 4, 2009. The twenty-second article is Cope, Curtis J. and Joseph Callanan, **Understanding the Objectively Reasonable Standard – Elements of Supervision – Part One,** LawOfficer.com, May 24, 2010. The twenty-third article is Cope, Curtis J. and Joseph Callanan, **Understanding the Objectively Reasonable Standard – Elements of Supervision – Part Two,** LawOfficer.com, August 27, 2010. The twenty-fourth article is Cope, Curtis J. and Joseph Callanan, **Understanding the Objectively Reasonable Standard – Elements of Supervision – Part Three,** LawOfficer.com, December 21, 2010. The twenty-fifth article is Cope, Curtis J. and Joseph Callanan, **Understanding the Objectively Reasonable Standard – Elements of Supervision – Part Four,** LawOfficer.com, July 8, 2011.

6)      Since the early 1980's, I have been called upon to consult and render expert opinions on law enforcement matters in Federal and State Courts within the State of California. I have been so qualified in numerous cases including criminal matters, civil litigation, law enforcement labor or personnel litigation and civil disputes. My opinions have not always favored the law enforcement position as I have opined and testified on cases on behalf of plaintiff. I have testified on behalf of law enforcement management, where I have recommended discipline, termination or criminal charges against police personnel. I have also made recommendations to settle cases where law enforcement personnel have made tactical or policy errors.

7)      In compliance with Federal Rule 26 (Civil Procedure), I have attached a listing of my testimonial work from 2009 to present.

8)      I generally charge fees for my time and services. I usually have an initial One Thousand ($1000.00) dollar charge to open a case or file fee. Clients are usually billed at two hundred ($200.00) dollars per hour for case review and case preparation. Clients are billed at Three Hundred ($300.00) per hour with a three (3) hour minimum for testimonial work at Depositions and Two Thousand Five Hundred ($2500.00) per day at Trial or Hearings plus usual and customary travel and per diem.

9)      I was retained as a consultant in the matter of Ramirez v Oxnard Police Department, et al. in March of 2014 and have since been provided with or reviewed the following relevant research materials and documents contained on several DVD's and sent electronically or other resources :

a.  Plaintiff's first amended complaint for damages

b.  Plaintiff's initial  & supplemental Rule 26 disclosures

c.  Plaintiff's Photographs (family, autopsy, St. John's, etc.)

4

d. Medical reports & records from St. John's , Gold Coast Ambulance and billings

e. Plaintiff's responses to City's request for production of documents

f. Teresa Ramirez's responses to City's request for production of documents & supplemental request for production of documents

g. Sketch by Erika Pedro & Winfred Kerford

h. Facebook messages

i. Ventura Office of the District Attorney report on the death of Robert Ramirez, dated 11/22/2013

j. Autopsy photographs & report

k. Plaintiff's reports from Thayer Private Investigations and their video & audio interviews

l. Plaintiff's Privilege Log

m. Defendant's initial Rule 26 disclosures & Supplemental disclosures, Bates Stamped 1001 - 1650

n. Defendant's Privilege Log

o. DVD Titled Bates Stamped 1722 – 2433; 2437-9163 & 9165 – 9378

p. DVD Titled Bates 9164 containing 6 Video Files

q. Defendants' Bocanegra, Brantner, Ross, Rodriguez, Ramirez, Wilfert, Zavala & Oxnard Police Department's responses to plaintiffs request for production of documents and responses to special interrogatories

r. Video of Post Autopsy of Ramirez's body

s. Communications 911 call to Oxnard Police/Fire Communications Center

t. Sketches used with interviews of Officer Bocanegra, Rodriguez, Ross & Sergeant Ramirez

u. Letters from Detective Kay to Attorney Ron Bamieh dated 7/18 & 9/17/2012

v. Various timelines related to the incident

w. Depositions of Ronald O'Holloran (O'Holloran); Matt Ross (Ross); Michael Bocanegra (Bocanegra); Pedro Rodriguez (Rodriguez); Aaron Zavala (Zavala); Greg Michael Herbert (Herbert); Eric Sonstegard (Sonstegard)

x. California Commission on Peace Officer Standards and Training (POST), Basic Academy Workbook Series, Learning Domains 5, Introduction to Criminal Law; 12, Controlled Substances; 15, Laws of Arrest; 20, Use of Force; 21, Patrol Techniques; 33, Arrest Methods – Defensive Tactics, 37, People with Disabilities; 38, Gang Awareness

y. Oxnard Police Department (OPD) Field Training Officer (FTO) Training Program; Oxnard Police Department (OPD) and POST Continuing Professional Training (CPT);  Advanced Officer (AO) and Perishable Skills Training (PST); Crisis Intervention Training (CIT); POST Supervisory Course

z. California Health & Safety & Penal Codes

10)     Based upon my careful review of the above 26 listed items and research materials contained therein, I am now prepared to offer competent expert testimony concerning the police practices and procedures apparent in the case, to wit:

a. This case stems from an incident that occurred on June 23, 2012, at approximately 2240 hours in the area of 1158 South L Street in Oxnard, California. OPD Communications received a 911 call from a person who advised a subject had swallowed an "eight-ball of meth" (methamphetamine), "he can't lay down because he's actual … it, it must be the meth, because he's just like bouncing off the walls". The caller was asked if the person was super agitated and the caller advised, "Yeah, it looks like he's having a, like a, like a fit", and that he had "never seen a person act this way". The caller was asked if the person in distress would cooperate with Emergency Medical Services (EMS) personnel or if police should be sent first. The caller agreed with the communications operator that police should be sent first. The record reflects that police personnel were dispatched to the location code three (emergency lights and siren) while EMS were dispatched and advised to stage in the immediate area. **It is my opinion OPD communications personnel handled the incoming call for services and dispatching of emergency personnel**

6

appropriately for the circumstances. It is also my opinion sending police personnel to respond and have EMS stage is appropriate procedures for the circumstances.

b. The record reveals Robert Ramirez (Robert) drove to Erika Pedro's (Erika) residence at 1158 L Street at approximately 2140 hours. Ms. Pedro was outside of her house with other friends when Robert drove up. When Robert arrived, he was observed shaking, he could not stand still and he was sweating heavily. Robert told Erika he had been stopped by the police and had swallowed an eight-ball of meth. (I noted OPD checked the records of all Ventura County Law Enforcement agencies and were unable to identify any police contact with Robert or his vehicle on 6/23/2012, prior to the 911 call) Erika had prior experience with Robert swallowing drugs when he had been stopped by police. She indicated during the prior occasion Robert had not been as extreme as he was acting on the night of the event. She indicated Robert was good for about a half an hour but then he began acting crazy and that he was seeing things. Robert told Erika he did not feel well and she should take him to the emergency room. As Erika continued to watch Robert, he became increasingly agitated; at one point threatening imaginary people. The record reflects Erika became concerned Robert might become violent and hurt himself or someone else. However, the record also reflects Erika was concerned about calling 911 because she knew Robert was on parole and she did not want to get him into trouble. The record reflects a 911 call was placed into OPD communications at 22:40:38 by Arturo Pedro and requested help for Robert[1]. The record reveals Robert continued his bizarre behavior and crossed the street to an empty house at 1174 South L Street where he laid onto the grass in front of the house. Robert stayed on the grass until police arrived and then he moved up to the porch of the same house. The record reflects EMS personnel arrived at their staging point (near the intersection of West Hill and South L Streets) at 22:43:20,

---

[1] See 911 call transcript placed to OPD Bates stamped 1326 - 1328

7

an ambulance staged at 22:47:00[2] and the first OPD unit arrived on scene at 22:47:14 (Bocanegra). **It is my opinion had Erika called for assistance when Robert first arrived at her location the outcome would have likely been much different because Robert was able to communicate with her. It is also likely Robert would have been able to communicate and cooperate with officers and EMS personnel, which would have allowed them to get him medical attention much sooner. It is my opinion staging fire and ambulance personnel is appropriate for the circumstance. Staging fire and ambulance personnel is standard operating procedures throughout the State and Country.**

c.  The record reflects Bocanegra began speaking to persons in the immediate area regarding Robert's ingestion of meth. He was directed to where Robert was. Bocanegra had on his person a PUMA Audio Digital Recorder. He activated it so that the events could be audio recorded. The record reflects Bocanegra approached Robert, who was on the porch of the vacant house and began speaking to him in a calm manner, assuring Robert there was an ambulance available and asked what Robert had taken. The record is clear Robert wasn't responsive to questions posed to him throughout the event. Bocanegra testified he thought Robert was on some type of central nervous system stimulate[3]. He also testified Robert was sweating; he was agitated, that he clinched and unclenched his fists and seemed "amped up"[4]. **It is my opinion any reasonable officer would consider Robert as a potential threat due to his obvious drug induced state. Law enforcement is trained that some persons who are under the influence of central system stimulates can possess super strength and that they can be extremely violent. It is my opinion Bocanegra demonstrated proper police procedures by**

---

[2] See Timeline Bates stamped 3307
[3] See Bocanegra deposition, page 26
[4] Ibid

assessing and identifying what the problem was and locating where the potential overdose person was located. Additionally, it is my opinion Bocanegra demonstrated proper police procedures in utilizing a calm non-threatening approach towards Robert[5].

d. The record reflects OPD Officer Brantner was the next to arrive at the scene. He arrived at 22:48:33. Sergeant Ramirez was the next law enforcement person to arrive at the scene. He arrived at 22:48:08. He was followed by Officers Rodriguez and Wilfert, who were riding together, arrived at 22:51:00. Officer Ross is the next to arrive. He arrived at 22:51:48. Officer Zavala was the next to arrive and he arrived at 22:52:22. The next to arrive was Sergeant Burr, who arrived at 22:03:22[6]. The record reflects Bocanegra continued talking to Robert as other units arrived. As the other officers arrived at the scene they also went to the location where Robert was at. The record is clear the calm non-threatening dialog directed towards Robert continued to be used. The record also indicated Rodriguez spoke to Robert in Spanish, in case Robert did not speak English. The record indicates the officers stood in a semi-circle in front of Robert approximately eight to ten feet away. Sergeant Ramirez assumed command of the scene. The record reflects he formed an action plan with officers, which included Bocanegra keeping his TASER upholstered and held behind his back, Brantner holding his expandable baton at a ready position and a contact team consisting of the rest of the officers present. Sergeant Ramirez also informed Robert the officers were there to help him and that he was not in trouble or under arrest. He assured Robert medical personnel were there to help him. He attempted to persuade Robert to lie on his stomach. **It is my opinion Sergeant Ramirez was performing his supervisorial duties well. He assumed control of the event and provided the officers with a tactical plan on how they were going to take control of Robert so that**

---

[5] See POST Basic Academy Workbook Series, Learning Domain 37
[6] All times are obtained from the Timeline Bates stamped 3307

medical personnel could treat him. Law enforcement supervisors are trained to provide this type of directions in these types of critical incidents[7]. Sergeant Ramirez also displayed good supervisory skills by taking time to try to control the event without having to resort to force so that medical personnel could respond to address Robert's needs. His tactical plan contained two less-lethal options besides hands-on. This demonstrates tactical awareness and allows for other force options to be available should they be required. His actions also demonstrate direct supervision over a situation that was tense, uncertain and rapidly evolving.

e. The record reflects officers were concerned Robert could pose a threat to the community if he escaped from officers trying to control him. The record reflects Rodriguez was tasked to being the initial contact officer. Rodriguez testified he approached Robert and said to him in Spanish, "Calmado" several times. He testified he placed his hand on Robert's left shoulder to see if he would react. Rodriguez testified Robert did not react so he reached down with his left hand and took hold of Robert's left hand and began sweeping it behind Robert's back. He continued, stating Robert began standing up from his seated position. The record reflects at about that point Robert looked at officers and stated "I'm going to fuck you up". It appears this statement was issued as Robert was standing up. Even though Robert has issued a threat to officers, they still continued trying to persuade Robert to comply with their directions. Once Robert gained his feet he started moving away from the officers and struggling with them. Officers moved to positions so they could take Robert to the ground and control him. The record is clear officers took Robert by his legs and arms and directed him into a prone position on the ground. The record indicates Robert placed his left arm underneath himself when he went to the ground. The record indicates Rodriguez had hold of Robert's left leg. From that position Rodriguez was able to take Robert's right wrist

---

[7] See POST Supervisors 80 hour training course

so that a handcuff could be applied to it. The record reveals Brantner
used his baton to pry Robert's arm out from under his body. Once that
occurred, Robert's left wrist was handcuffed. The record indicates
Bocanegra removed the dart cartridge from his TASER and applied the
TASER to Robert's left shoulder blade in case that non-lethal force option
was needed; however he never fired the device at any time during the
struggle. The record also reflects an officer held Robert's head still
because Robert was banging it onto the cement and tried to minimize
Robert's self-induced injuries from his resistance to their attempts to help
him. Officers are trained that one means of controlling a combative
subject is to take the person off balance and hinder mobility. Officers are
trained to utilize take-downs, control holds, and body weight while
controlling resistance like what has been described in this event[8].
California Penal Code Section 835a provides officers may use reasonable
force to effect an arrest, to overcome resistance and to prevent escape. It
also provides if officers use reasonable force to effect an arrest, to
overcome resistance and to prevent escape they are not deemed the
aggressor[9]. OPD authorizes their personnel to use reasonable force
when taking people into custody. **It is my opinion the officers used
reasonable force in controlling Robert during this time frame of the
event. It is further my opinion the types of force options selected by
the officers are taught and approved techniques by POST and OPD.
It is apparent as soon as Robert was placed into handcuffs and his
mobility was controlled by the use of a hobble, no additional force
was used against him. This demonstrates good police procedures
and is an example of well-trained officers.**

f. The record reveals from the time officers initially contact Robert to both of
his hands being handcuffed was approximately one minute 41 seconds.
Throughout this time frame the audio tapes demonstrate officers are

---

[8] See POST Basic Academy Workbook Series, Learning Domain 33
[9] See POST Basic Academy Workbook Series, Learning Domain 20

11

communicating with each other in order to adjust to the struggle with Robert. This dialog demonstrates a team approach to control Robert's resistance and good police procedures. Officers were directing their attention to different parts of Robert's body during the struggle, however by communicating with each other they were successful in getting Robert controlled while using reasonable force to do so. The record reflects Robert was kicking, thrashing and contorting his body, trying to lift himself up and resisting the efforts of the officers. Besides handcuffing, Robert's resistance required the application of a hobble to his lower legs. Robert's choice of ingesting the Meth likely caused his altered state and him not being responsive to the lawful commands and directions of the officers. **It is my opinion any reasonable officer would have attempted to control Robert prior to requesting EMS personnel to come into the scene. It is also my opinion any reasonable officer would have used reasonable force to accomplish control over Robert, including handcuffing and applying a hobble. It is my opinion the officers were reacting as they have been trained to perform in this type of situation. It is also my opinion placement of body weight onto Robert's body during the event is proper and good police procedures.**

g.   The record reflects after Robert was handcuffed and the hobble was placed on his legs, officers checked him for vital signs as well as immediately requesting EMS to respond to the location from where they had staged. The record also indicates officers rolled Robert up onto his side, as they had been trained. The record also reveals an officer ran to his police vehicle and retrieved a CPR mask in order to provide CPR to Robert. The record reflects EMS personnel arrived at the location and began providing Robert with treatment. The record reveals Robert was transported to St. John's Regional Medical Center for further treatment. **It is my opinion officers took reasonable steps to cause Robert to receive medical care. It is my opinion any reasonable officer would**

12

have considered requesting criminal charges to be lodged against
Robert based upon his actions, had he survived. It is uncontested
Robert was under the influence of a controlled substance, which
could have led to a charge of 11550 of the California Health and
Safety Code. The record also reveals Robert uttered the statement
"I'm going to fuck you up", which any reasonable officer could have
concluded was a challenge to fight. That challenge would be a
violation of 415 (a) of the California Penal Code. During the struggle
with Robert he resisted officers in the performance of their duties,
which could be a violation of Penal Code sections 69 and 148 (a) (1).
It was obvious Robert was intoxicated from his drug ingestion to the
point that he was unable to care for his own safety or the safety of
others. Thus, he could have been charged with violating California
Penal Code Section 647 (f).

h. The record reveals OPD caused an extensive investigation to take place
after the event ended. Additionally, members of the District Attorney's
Office were notified and also responded to the scene. The record reflects
that office conducted an independent investigation to determine whether
any of the actions by the officers resulted in criminal behavior. Their report
reflects no criminal charges were filed against any officer. The record also
reflects the F.B.I. was contacted and declined to conduct an investigation
into the circumstances of Robert's death. I have found nothing in the
record that reflects any member of OPD firing a TASER on Robert. I have
found nothing in the record that would substantiate any member of OPD
used some form of choke hold on Robert. I have found nothing in the
record that would indicate any member of OPD engaged in a conspiracy
to cover up any facts of this case. I have found that the members of OPD
meet or exceed the training standards of POST and that the Department
provides their employees with exceptional ongoing training. I have found
nothing in the record that would indicate any member of OPD acted with
deliberate indifference to Robert's Civil Rights. I have found nothing in the

13

record that would indicate OPD has any practice, policy or procedure that indicates members should be indifferent to any person who might need medical care for the purposes of saving money. I have found nothing in the record that would indicate OPD has any custom, policy or practice of condoning members to use excessive force against citizens. I have found nothing in the record that would indicate OPD condones any member providing any false testimony to protect other members of OPD. I have found nothing in the record that would indicate OPD conducted inferior investigations in this or any other case. I have found nothing in the record that demonstrates any member of OPD planted or withheld evidence in this case. I have found nothing in the record that OPD has any practice, policy or procedure of failing to supervise the employees of the organization. I have found nothing in the record that would indicate OPD failed to screen qualified persons for the position of peace officer within the City. I have found nothing in the record that would indicate OPD fails to investigate citizen complaints against their personnel. I have found nothing in the record that would indicate OPD hires persons who are prone to use excessive force against citizens. I have found nothing in the record that would indicate any member of OPD was negligent in any of their actions involved in this case. I have found nothing in the record that would indicate any member of OPD intentionally inflicted emotional distress against any citizen.

# Expert Witness Affirmation

I, Curtis J. Cope, do state and affirm under penalty of perjury that the above expressed expert opinions are well considered and clearly based on recognized standards and that I will so testify under oath in a Court of Law, if so called.

SIGNED_____

AT Orange County, CA on September 30, 2014

## CV

| | |
|---|---|
| **PRESENT POSITION** | Consultant / Expert Witness / Instructor Use of Force, Police Practices and Procedures, Supervision and Training 1985 to Present |
| **EXPERIENCE** | 1968  Santa Ana Police Department Santa Ana, California Police Officer - Patrol and Traffic |
| | 04-01-69 - 10-30-97- Huntington Beach Police Department, Huntington Beach California |
| | Patrol Officer; Traffic Motor Officer; S.W.A.T. Team Member and Team Leader; Field Training Officer; Department Arrest & Control Instructor |
| | Patrol Supervisor (appointed 2/77); Motor Supervisor; A.I. Supervisor, FTO Supervisor, S.W.A.T. Team Leader; Adjutant to the Uniform Division Commander; Special Enforcement/Gang Unit Supervisor; Department Arrest & Control Instructor |
| | Patrol Watch Commander (appointed Lieutenant 6/30/90); Area Commander (appointed 1-16-92); General Investigation Bureau Commander (appointed 12-24-94); Department Arrest & Control Instructor [Medical Retirement 10-30-97] |
| **PROFESSIONAL CERTIFICATES** | California Commission on Peace Officer Standards and Training (POST) |

15

| | |
|---|---|
| Basic | 1970 |
| Intermediate | 1975 |
| Advanced | 1977 |
| Supervisory | 1983 |
| Management | 1992 |
| Master Instructor | 1994 |

California Board of Education
Community College Limited Services Credential
Police Science Subject Matter - Valid for Life (1976)

**EDUCATION**

Associate in Arts Degree (AA)
Golden West College, Police Science 1975
Huntington Beach, California

Baccalaureate Degree (BA)
University Of Redlands, Public Administration 1977
Redlands, California

Graduate
Orange County Peace Officers Academy 1968
Orange Coast College, Costa Mesa, California

Graduate
P.O.S.T. Master Instructor Development Program
State of California - 1993

**MILITARY EXPERIENCE**

Army of the United States of America 1965 - 1967
Honorable Discharge Rank/Assignment E-5 Sergeant/Squad Leader, Infantry, Republic of South Vietnam

**PROFESSIONAL ACTIVITIES**

Instructor - Criminal Justice
Training Center at Golden West College
Past Instructor - Saddleback Community College
Instructor / Presenter of law enforcement training to in-service officers or departments
Instructor / Presenter for ASLET National Conference
Member of ILEETA
Specific area of expertise - arrest and control tactics and baton techniques, use of force, police procedures & practices, DUI, SWAT Operations, Report Writing, Supervision and Training
Instructor - Huntington Beach Police Department
Instructor - Commission on Peace Officer Standards and Training, Institute of Criminal Investigation Instructor Workshops

16

Certified TASER Instructor
Consultant - Commission on Peace Officer Standards
and Training, State of California
Declared Police Tactics / Use of Force Expert Municipal,
Superior and Federal Courts within the State of California,
Arizona, Oklahoma and New Mexico

**PUBLICATIONS**     Cope, Jeff, Goddard, Ken. **WEAPONLESS CONTROL FOR POLICE AND SECURITY PERSONNEL**, Charles Thomas Publisher, Springfield, Illinois, August 1979.

Cope, Jeff, **Arrest and Control Techniques Student Syllabus for Instructors**, California POST (Master Instructor Thesis), 1993

Cope, Jeff, DOCUMENTING **THE USE OF FORCE**, Journal of California Law Enforcement, Volume 30, Number 1, March 1996, California Peace Officers' Association Publisher, and The ASLET Journal, March/April Issue, 1996.

Cope, Jeff, Five**-Step Method to Regional Crime Analysis**, The Police Chief Magazine, May 1998.

Cope, Jeff, **California Investigator Training**, The Law Enforcement Trainer, The Journal of the American Society for Law Enforcement Trainers, January / February 1999.

Cope, Jeff & Fraser, Jim, **A Trainer's Perspective**, The Follow-up, A Training Newsletter for California Law Enforcement Investigators, Robert Presley Institute of Criminal Investigation, Commission on Peace Officers Standards and Training, Volume 4, Number 2, October, 1999.

Cope, Curtis J., **Report Writing Review A Supervisor's Mandate**, The Law Enforcement Trainer, The Journal of the American Society for Law Enforcement Trainers, Volume 17, Number 8 May/June, 2002.

Cope, Curtis J., **Building Training from Lessons Learned – A Checklist to Successful Training**, The Journal of California Law Enforcement, California Peace Officer's Association, Volume 37, Number 1, 2003

17

Cope, Jeff & Less, Karen, **Course Development: How Long Should It Take**, The Law Enforcement Trainer, The Journal of the American Society for Law Enforcement Trainers, Volume 18, Number 6 November/December 2003

Cope, Curtis J & Swobodzinski, Kimberle, A, **Using Forensic Equipment to Enhance Use of Force Investigations**, Journal of California Law Enforcement, Volume 39, Number 3, 2005

Cope, Curtis J., **Enhancing Use of Force Training**, Illinois Law Enforcement Training & Standards Board Executive Institute FORUM, Volume 7, Number 3, March / 2007 and Law Officer Magazine, Volume 3, Issue 6, June 2007

Cope, Curtis J., **A Guide To Life After Law Enforcement,** LawOfficer.com, May 30, 2008.

Cope, Curtis J. & Joseph Callanan, **What Is The Standard On Use Of Force**, LawOfficer.com, July 29, 2008.

Cope, Curtis J. & Joseph Callanan, **Understanding the Objectively Reasonable Standard**, LawOfficer.com, September 30, 2008

Cope, Curtis J. & Joseph Callanan, **Applying the Objectively Reasonable Standard**, LawOfficer.com, October 30, 2008

Cope, Curtis J. & Joseph Callanan, **Understanding the Objectively Reasonable Standard: Self Defense**, Law Officer.com, December 29, 2008.

Cope, Curtis J. & Joseph Callanan, **Understanding the Objectively Reasonable Standard: Defense of Others**, LawOfficer.com, January 2, 2009

Cope, Curtis J. & Joseph Callanan, **Understanding the Objectively Reasonable Standard: Effectuating An Arrest**, LawOfficer.com, January 29, 2009

Cope, Curtis J. and Joseph Callanan, **Understanding the Objectively Reasonable Standard: Prevent an Escape**, LawOfficer.com, March 30, 2009

18

Cope, Curtis J. and Joseph Callanan, **Understanding the
Objectively Reasonable Standard: Overcome Resistance
– Part One**, LawOfficer.com, June 17, 2009

Cope, Curtis J. and Joseph Callanan, **Understanding the
Objectively Reasonable Standard: Overcome Resistance
– Part Two**, LawOfficer.com, September 2, 2009

Cope, Curtis J. and Joseph Callanan, **Understanding the
Objectively Reasonable Standard: Overcome Resistance
– Part Three**, LawOfficer.com, September 23, 2009

Cope, Curtis J. and Joseph Callanan, **Understanding the
Objectively Reasonable Standard – Taser: Objectively
Reasonable Force**, LawOfficer.com, November 4, 2009

Cope, Curtis J. and Joseph Callanan, **Understanding the
Objectively Reasonable Standard – Elements of
Supervision – Part One**, LawOfficer.com, May 24, 2010

Cope, Curtis J. and Joseph Callanan, **Understanding the
Objectively Reasonable Standard – Elements of
Supervision – Part Two**, Law Officer.com, August 27, 2010

Cope, Curtis J. and Joseph Callanan, **Understanding the
Objectively Reasonable Standard – Elements of
Supervision – Part Three**, LawOfficer.com, December 21,
2010

Cope, Curtis J. and Joseph Callanan, **Understanding the
Objectively Reasonable Standard – Elements of
Supervision –Part Four**, LawOfficer.com, July 8, 2011

**AWARDS**           In excess of 125 awards or commendations during active
law enforcement career
California POST Institute of Criminal Investigation
Instructional Excellence Award for the years of 2000 / 2001
California POST Institute of Criminal Investigation Founders
Award for Leadership in Instructional Excellence 2006
Mentoring Excellence Award, California POST Instructor
Symposium, 2009
Excellence in Redesigning the Institute of Criminal
Investigation Instructor Course, 2010 & 2011
Mentoring Excellence for Instructor Development Institute
Mentor Program, 2013

**ASSOCIATIONS**     Member International Association of Chiefs of Police
Member of California Peace Officers Association
Member International Law Enforcement Educators and Trainers Association
Member of Master Instructor Development Program Association
Member of Retired Peace Officers Association of California

## P.O.S.T. CONSULTING

1.  **Peace Officer Killing Study**          1986, 1987
    Study reasons for California Officers being assaulted &
    killed in the line of duty. Made recommendations to
    P.O.S.T. to change training at basic academy level - Adopted

2.  **Basic Course Waiver Skills Test**          1985, 1986
    Developed 3-week mini academy for officers to be
    re-certified for police officer powers, waiving need
    to attend basic academy

3.  **Carotid Restraint Performance**          01/87
    Objectives 12.6.6
    Reviewed current teachings & made recommendations for
    changing P.O.S.T. teaching guidelines - Adopted by POST

4.  **Basic Academy Patrol Procedures**          03/85
    Reviewed current teachings & made recommendations for
    changing P.O.S.T. teaching guidelines - Adopted by POST

5.  **Instructed Instructors re Carotid Restraint**          03/87
    P.O.S.T. Seminar at Orange County Sheriff's Academy
    Taught & updated academy instructors in new P.O.S.T.
    guidelines for carotid restraint instruction

6.  **Arrest & Control Performance Objectives**     1981, 1983
                                                    1985, 1987
    Reviewed current teachings & made recommendations for
    changing P.O.S.T. teaching guidelines - Adopted

7.  **Institute of Criminal Investigation**          1993 to present
    Instructors Up-date Course,
    Developed Course / Instruct new methodology of
    classroom presentation to potential new instructors

20

8.     **Use of Force / Arrest & Control**          1993, 2003
       Reviewed current teaching & made recommendations for
       changing P.O.S.T. teaching guidelines - Adopted

9.     **P.O.S.T. Strategic Planning Steering Committee** 1995
       Facilitated committee's study of future direction P.O.S.T.
       will take during next ten years

10.    **P.O.S.T. Controlling Violent Subjects**          05/96
       2-Hour Tele-course, Part One
       Participated in preparing material aired

11.    **P.O.S.T. Controlling Violent Subjects**     11/96
       2-Hour Tele-course, Part Two
       Participated in preparing material aired

12.    **P.O.S.T. Institute of Criminal Investigation**     1996, 1997
       Homicide Investigators Course Development @ LAPD/LASD
       Facilitated development of course material, presentation methods,
       lesson plans, goals & objectives

13.    **P.O.S.T. Supervisory Course Instructor Update**       08/97
        Workshop - Develop Curricula for pilot program that will enhance
       Instructors abilities to teach new 120 hour Supervisor Course (2 days
       developing)

14.    **Appointed to position of Program Administrator** 11/97
       P.O.S.T Institute of Criminal Investigation Instructor Development
       Workshops. Coordinate Instructor Base, Develop Training and
       Annual Workshops P.O.S.T Institute of Criminal Investigation
       Instructor Development Division. Coordinate Instructor Base,
       Develop Training and Annual Workshops

15.    **P.O.S.T. Skills Test for Basic Course (LD#33)** 01/98
       Develop and design a testing method, which will satisfy 832PC
       requirements and will be used as a midterm test in the basic police
       academy Develop and design a testing method, which will satisfy
       832PC requirements and will be used as a midterm test in the
       basic police academy

16.    **P.O.S.T. Workbook Development - Basic Course** 01/98
       (LD#33) - Develop Student Self Paced Workbook for
       Learning Domain #33 which deals with Weaponless
       Defense and Impact Weapons

17.    **P.O.S.T. Supervisor Course Instructor Up-date**      1998/1999

Instruct instructors in new methodology of classroom presentation skills (3 Pilot Programs)

18. **P.O.S.T. Investigating the Use of Force Course**     09/99
Facilitated the pilot course put on by Inyo County Sheriff's Department Lieutenant Steve Rogers presenter, fulfilling requirements for his Master Instructor Development Program - 32 Hours

19. **Institute of Criminal Investigation (POST) AIM**     02/00
Focus Group - Project to explore and develop software that will assist instructors or administrators in the development and/or management of training material.

20. **Master Instructor Development Program (POST)** 09/01
Curriculum review process for presentation of instruction for future classes.

21. **Safety Guidelines for POST Students (POST)** 06/03
Review of Safety Guidelines for all Peace Officer Training conducted by POST. Recommend changes for adoption by the Commission.

22. **Master Instructor Development Program (POST)** 2003
Planning committee for conference of instructors. Selection of Curriculum

23. **POST Workbook Development - Basic Course** March/April 2004
Reviewed current teachings & made recommendations for changing P.O.S.T. teaching guidelines. LD 20 & 33

24. **Academy Instructor Facilitation Skills Course – Pilot**  May 2005
Present model to change method of instruction from an instructor centered lecture to adult model active student centered

25. **POST Instructor Symposium Planning Sessions – 2005 – 2012**
Assist in planning annual Symposium curriculum for Statewide Instructor Skills conference

26. **POST "Investigation Supervisor Case Management Course" – 2009**
Sit on committee to design a new course for Investigation Supervisors and mentor MICC student through all stages of development of this course.

27. **POST Institute of Criminal Investigation Instructor Course Redesign 2010 & 2011**

28.   **POST Tactical Leadership Institute Planning Session @ San Diego Regional Training Center 2014**

## S.W.A.T. EXPERIENCE

During my career at the Huntington Beach Police Department I have been assigned to the Special Weapons and Tactics Team on three different occasions. The first assignment was between the dates of September, 1974 to February, 1977. The second assignment was between March, 1978 to June, 1980 and my third assignment was between the dates of May, 1987 to June, 1990.

During my assignments to the S.W.A.T. Team I held the positions of gas man, sniper, entry team member, scout and team leader. I have qualified with several types of handguns, shotguns, rifles, gas guns and machine guns. In addition to firearms, I also qualified in the use of distraction devices and gas deployment. I was also the team instructor in arrest / defense tactics.

Training for the S.W.A.T. Team consisted of at least one day per month (10 hours) in which the training would be broken up into weapons qualification and practical skill drills. These training days represent almost 1,000 hours of practice. In addition to those training days I have received in excess of 450 hours of specialized training from United States Marine Corps, F.B.I., Department of Justice, Secret Service, California State Police etc. I have attended the basic S.W.A.T. course hosted by the Criminal Justice Training Center at Golden West College in Huntington Beach and the S.W.A.T. Commanders Course hosted by San Joaquin Delta College in Stockton, CA. I have taught in the S.W.A.T. basic course at Golden West College.

I have participated in numerous call outs in which the S.W.A.T. Team was deployed. In addition to call outs, I have been in charge of planning for the security of the Vice President of the United States, the Governor of California, other United States & State officials, military V.I.P.s and government officials from other countries, when those persons visited the City of Huntington Beach.

In April - 1993, I assumed temporary command of the S.W.A.T. team. I took over the team as its acting commander during the absence of the existing commander. I held that position for approximately six months. I relinquished command upon the return to duty by the unit leader.

## LAW ENFORCEMENT TRAINING

| | |
|---|---|
| Basic Academy-Orange County @ Orange Coast College | 1968 |
| Driver Training-L.A.S.O. | 1969 |
| Tear Gas | 1970 |
| Basic Weaponless Defense-Instructors CSC L.A. (84 hours) | 1970 |
| S.W.A.T.-Camp Pendleton | 1971 |

23

| | |
|---|---|
| Advanced First Aid | 1972 |
| Emergency Vehicle Operation | 1972 |
| Mutual Aid/ Civil Disorder Training -O.C.S.D. | 1972 |
| Police Motorcycle Operation | 1972 |
| Traffic Program Management Institute -Kellogg West | 1973 |
| Advanced Officers Course | 1974 |
| Advanced Drivers Training | 1974 |
| Hazardous Devices - O.C.S.D. | 1974 |
| Advanced Officer Training | 1975 |
| Legal Education Update -CSU Long Beach | 1975 |
| Officer Survival - C.S.T.I. | 1975 |
| C.P.R. | 1976 |
| Doppler Radar Operation | 1976 |
| Motorcycle Training -C.H.P. | 1976 |
| Techniques of Teaching - U.C.L.A. extension | 1976 |
| PR 24 Baton Training | 1976 |
| Traffic Accident Investigation - C.H.P. | 1976 |
| C.P.R. / First Aid Update | 1977 |
| Legal Education Update - CSU Long Beach | 1977 |
| P.O.S.T. Supervisor Course - Golden West College | 1977 |
| Internal Affairs -CSU Long Beach | 1978 |
| Report Writing | 1978 |
| Civil Emergency Management - C.S.T.I. | 1978 |
| Advanced Officer Training - F.B.I.-L. A. | 1978 |
| Hostage Negotiation - Rio Hondo College | 1978 |
| Chemical Agents - F.B.I. | 1978 |
| Protection of Public Officials - CSU Long Beach | 1978 |
| Urban Terrorist Activity - D.O.J. | 1978 |
| Legal Education Update - CSU Long Beach | 1979 |
| Advance Officer Training | 1979 |
| Investigation of Violent Crimes - C.S.T.I. | 1980 |
| Outlaw Motorcycle Gangs | 1981 |
| Assertive Supervision | 1981 |
| Alcohol & Drug Recognition - D.A.R.T. | 1982 |
| Hazardous Materials | 1982 |
| Interview and Interrogation | 1983 |
| Skid mark Analysis - C.H.P. Redwood College | 1983 |
| Supervisor Update - Chapman College | 1984 |
| Traffic Collision Reconstruction & Investigation | 1985 |
| Basic Academy Patrol Procedures - P.O.S.T. | 1985 |
| Practical Teaching Methods | 1985 |
| Nova Stun Gun | 1985 |
| Advanced Officer Training | 1985 |
| Management Training | 1986 |
| Progressive Discipline | 1986 |
| Weaponless Defense/ Carotid Restraint | 1987 |

| | |
|---|---|
| Protective Operations - Secret Service | 1987 |
| P.O.S.T. Killing Study | 1987 |
| P.O.S.T. Officer Survival | 1987 |
| Incident Command System | 1987 |
| S.W.A.T. Academy - Golden West College | 1988 |
| Advanced Officer Training | 1988 |
| Supervisor Update Seminar – 24 Hours | 1988 |
| S.W.A.T. Commanders Course -San Joaquin College | 1988 |
| White Hate Groups - D.O.J. | 1989 |
| Gang Seminar - D.O.J. | 1990 |
| Gang Awareness - San Bernardino S.D. | 1990 |
| Patrol Manpower | 1990 |
| Management Course - P.O.S.T. 80 hours | 1990 |
| Tactical Baton Instructors - ASP Santa Monica 16 hours | 1991 |
| Master Instructors - P.O.S.T.-Sacramento 80 hours | 1991 |
| Master Instructors - P.O.S.T.- San Diego 16 hours | 1992 |
| Master Instructors - P.O.S.T.- San Diego 16 hours | 1993 |
| Master Instructors - P.O.S.T.- San Diego 16 hours | 1993 |
| Use of Force - P.O.S.T. - Costa Mesa 24 hours | 1993 |
| Master Instructors - P.O.S.T. - San Diego 40 hours | 1993 |
| Master Instructors - P.O.S.T. - San Diego  8 hours | 1994 |
| Manufacture Rock Cocaine - D.O.J. | 1994 |
| Civil Disorder - L.A.P.D. Lt. Hillman 4 hours | 1995 |
| Lessons of Rodney King -Mike Stone 4 hours OC Homicide | 1995 |
| Oklahoma Bombing Incident - C.P.O.A.  4 hours | 1995 |
| Tactical Driving - H.B.P.D.        4 hours | 1996 |
| Use of Force/Arrest & Control - L.A.P.D. 8 hours | 1996 |
| Police Liability - C.P.O.A. 4 hours Capt. Jim Nunn | 1996 |
| Police Managers Liability - C.P.O.A. 4 hours M. Mayer | 1996 |
| Leadership - P.O.S.T. - 2 hours | 1997 |
| Vehicle Pursuit Training - P.O.S.T. - 1 hour | 1997 |
| Master Instructor Update - P.O.S.T. - 20 hours | 1997 |
| Use of Force Seminar - A.S.L.E.T. - 24 hours | 1997 |
| Tactical Scenarios - HBPD - 4 hours | 1998 |
| MP-5 Familiarization - I.T.R. (Long Beach Range) 3 hours | 1999 |
| Master Instructor Update - P.O.S.T. - 24 hours | 1999 |
| Investigating Use of Force - Inyo County - 32 hours | 1999 |
| Instructor Development - Institute of Criminal Investigation | 2000 |
| O.C. Gas Training - Criminal Justice Training Center GWC | 2000 |
| ICI Administrators Course - P.O.S.T. 24 hours | 2000 |
| Master Instructor Conference - P.O.S.T. 24 hours | 2001 |
| Institute of Criminal Investigation - P.O.S.T. 32 hours | 2001 |
| Golden West College/HBPD - F.A.T.S. Training 1 hour | 2001 |
| Less Lethal Instructors Course - I.T.R. Anaheim PD 16 hours | 2002 |
| Use of Less Lethal Force: Legal Issues - ASLET 2 Hours | 2003 |
| Canadian National Use of Force Framework - ASLET 2 Hours | 2003 |

| | |
|---|---|
| Trainer's Role in Force Investigations - ASLET 4 Hours | 2003 |
| Questionable Police Shootings - ASLET 4 Hours | 2003 |
| Training Managers Open Forum - ASLET 4 Hours | 2003 |
| Positional Asphyxia & Sudden Death - ASLET 2 Hours | 2003 |
| Use of Force Investigations – Covina PD – 24 Hours | 2003 |
| Master Instructor Conference – P.O.S.T. – 28 Hours | 2004 |
| When the Batter is a Police Officer – ASLET 2 Hours | 2005 |
| Current Issues Physical Force – ASLET 4 Hours | 2005 |
| Force Science Research Center Data – Dr. Lewinski 4 Hours | 2005 |
| Terrorism Liaison Officers Role in School – 24 Hours OCSD | 2005 |
| Law Enforcement Liability – ASLET 4 Hours | 2006 |
| Shoot/Don't Shoot – ASLET 2 Hours | 2006 |
| Force Science Research Center Data – Dr. Lewinski 2 Hours | 2006 |
| Less Lethal Issues – ASLET 4 Hours | 2006 |
| Tactics for Dealing with Celebratory Disturbances 2 Hours | 2006 |
| Pre-Incident Indicators of Terrorism – ASLET 2 Hours | 2006 |
| Weapons of Mass Destruction & First Responders – 4 Hours | 2006 |
| Sudden In-Custody Deaths – ASLET 4 Hours | 2006 |
| Fourth Amendment Use of Force Model – ASLET 4 Hours | 2006 |
| Master Instructor Conference – P.O.S.T. – 28 Hours | 2006 |
| Long Beach PD Abe/Wade O.I.S. – CPOA 4 Hours | 2007 |
| Taser Instructor's Course – Taser International | 2008 |
| Instructor Symposium – P.O.S.T. – 28 Hours | 2009 |
| Mentor Training – POST – 8 Hours | 2010 |
| A.E.L.E. Lethal & Less Lethal Force Workshop – 22 Hours | 2010 |
| Instructor Symposium – P.O.S.T. – 28 Hours | 2010 |
| Instructor Symposium – P.O.S.T. – 28 Hours | 2011 |
| Instructor Symposium – P.O.S.T. – 28 Hours | 2012 |

## TESTIMONY

| | |
|---|---|
| Jauregui v Crossroads Bar 07CECG 02415 AMC | 02-09 Deposition |
| Sarmiento v County of Orange SACV 06-0586 DOC | 02-09 Trial |
| Colton v County of Orange SACV 07-1101 | 03-09 Trial |
| Shepherd v Crawford 1:08-CV-0128 OWW | 04-09 Deposition |
| Su'e City of Long Beach NC 051623 | 05-09 Deposition |
| U. S. Border Patrol v Caruso | 05-09 Administrative Hearing |

26

ELC 07-46

| | |
|---|---|
| Marlow v City of Orange<br>CV 05-6053 | 06-09 Trial |
| Su'e v City of Long Beach<br>NC 051623 | 06-09 Trial |
| Shepherd v Crawford<br>1:08-CV-0128 OWW | 06-09 Trial |
| Martinez v City of Fairfield<br>FCS 030250 | 06-09 Deposition |
| Herrera v County of Orange<br>07CC 09886 | 06-09 Trial |
| Young v County of Los Angeles<br>CV 08-05438 R | 06-09 Deposition |
| Martinez v City of Fairfield<br>FCS 030250 | 06-09 Deposition (2nd) |
| Gregg v City of Los Angeles<br>CV 08-2368 GAF | 07-09 Deposition |
| Martinez v City of Fairfield<br>FCS 030250 | 08-09 Trial |
| Gregg v City of Los Angeles<br>CV 08-2368 GAF | 09-09 Trial |
| Todd v County of Los Angeles<br>PC 042946 | 11-09 Trial |
| Mendoza v County of Los Angeles<br>BC 387119 | 11-09 Deposition |
| Salgado v County of San Bernardino<br>CV 08-08382 PA | 12-09 Deposition |
| Patton v City of Long Beach<br>NC 052262 | 01-10 Deposition |
| Patton v City of Long Beach<br>NC 052262 | 02-10 Trial |

27

| | |
|---|---|
| Salgado v County of San Bernardino<br>CV 08-08382 PA | 03-10 Trial |
| Kirk v County of Los Angeles<br>BC 386729 | 04-10 Deposition |
| Leyro v City of Chowchilla<br>CV 01-00675 OWW | 06-10 Trial |
| Navarro v County of Los Angeles<br>BC 407237 | 07-10 Trial |
| Green v County of Los Angeles<br>BC 409235 | 07-10 Trial |
| Hale v County of San Diego<br>37-2009-00088724-CU-PO-CLT | 08-10 Deposition |
| DeGuevara v County of Los Angeles<br>CV 09 06732 | 08-10 Deposition |
| Miranda v County of Los Angeles<br>BC 397873 | 08-10 Deposition |
| DeGuevara v County of Los Angeles<br>CV 09 06732 | 08-10 Trial |
| Hale v County of San Diego<br>37-2009-00088724-CU-PO-CLT | 09-10 Trial |
| DeGuevara v County of Los Angeles<br>CV 09 06732 | 09-10 Trial (#2) |
| Hoxey v County of Los Angeles<br>CV 09-1372 DSF | 09-10 Deposition |
| Marella v City of Bakersfield<br>1:09-CV-00453 OWW | 10-10 Trial |
| Nelson v City of Orem Utah<br>09-A-16664 | 10-10 Administrative Hearing |
| Guillory v County of Orange<br>30-2008-00212410-CU-CR-CXC | 12-10 Deposition |

| | |
|---|---|
| Navarro v City of Fontana<br>ED CV 01525 VAP | 04-11 Trial |
| Carter v City of Carlsbad<br>CV 10 01072 IEG | 04-11 Deposition |
| Rodriguez v County of San Bernardino<br>CV 09 08410 DSF | 05-2011 Deposition |
| Berg v City of Carlsbad<br>CV 09 2669 JAH | 05-2011 Deposition |
| Rodriguez v County of San Bernardino<br>CV 09 08410 DSF | 07-2011 Trial |
| Gates v Orange County Sheriff's Department<br>SACV 10-00218 | 08-2011 Deposition |
| Demarest v AMTRAK<br>BC 437078 | 08-2011 Deposition |
| Sameth v County of Los Angeles<br>CV-10-06565 VBF | 08-2011 Deposition |
| Ortega v Deputy Giammalvo<br>3:07-CV-04436 EDL | 09-2011 Deposition |
| Mitchell/Toles v City of Long Beach<br>NC 053117 & 053178 | 09-2011 Deposition |
| Wade v City of Santa Maria<br>SA550-017 | 10 & 11- 2011 Administrative |
| Hailey v City of Bakersfield<br>S-1500-CV-264464 AEW | 11-2011 Deposition |
| Batchen v City of Vernon<br>BC 423702 | 12-2011 Deposition |
| Mares v County of Los Angeles<br>CV 10 10077 MMM | 12-2011 Deposition |
| Vilchis v City of Bakersfield<br>1:10-CVC00893 OWW | 12-2011 Deposition |
| Hernandez v City of Long Beach | 12-2011 Trial |

29

CV 10-4645 DMG

Wilson v City of Long Beach                          02-2012 Trial
CV 09-03544 PJW

Lugo v City of Los Angeles                           03-2012 Deposition
BC 449672

Koziel v City of Norco                               03-2012 Deposition
RIC 522773

Barnes v City of San Bernardino                      03-2012 Trial
CIVSS 807102

Colson v City of Bakersfield                         05-2012 Deposition
1:10-CV-01776 OWW

Guillory v Orange County Sheriff's Department 05-2012 Trial
30-2008-00212410-CU-CR-CXC

Simpson v County of Los Angeles                      05-2012 Deposition
TC 025257

Demarest v AMTRAK                                    06-2012 Trial
BC 437078

Sanchez v County of San Bernardino                   06-2012 Trial
CV 10-9384 MMM

Miranda v County of Los Angeles                      08-2012 Deposition
BC 397873

Harb v City of Bakersfield                           08-2012 Deposition
56-2011-00405522-CV-PO-VTA

Carrillo v County of Los Angeles                     09-2012 Deposition
CV 11-10310 SVW

Harb v City of Bakersfield                           12-2012 Trial
56-2011-00405522-CV-PO-VTA

BJ v Secor                                           12-2012 Deposition
CV 11-10797 RGK

Sanchez v County of San Bernardino                   01-2013 Trial (2nd)
CV 10-9384 MMM

| | |
|---|---|
| Ortega v Hopley<br>EDCV 12-1315 GAF | 01-2013 Deposition |
| Olivas v United States of America<br>11 CV-2026 WQH | 01-2013 Deposition |
| BJ v Secor<br>CV 11-10797 RGK | 02-2013 Trial<br>Hung Jury |
| BJ v Secor<br>CV 11-10797 RGK | 02-2013 2nd Trial |
| Mam v City of Fullerton<br>SACV 11-1242 JST | 03-2013 Deposition |
| Mam v City of Fullerton<br>SACV 11-1242 JST | 04-2013 Trial |
| Isaiah Williams v D. Williams<br>4:07-CV-04464 CW | 04-2013 Deposition |
| Simpson v County of Los Angeles<br>TC 025257 | 04-2013 Deposition (2nd) |
| Moses v City of Huntington Beach<br>30-2012-00540509 | 05-2013 Deposition |
| Pierce v County of Sierra<br>2:11-CV-02006 AWI | 05-2013 Deposition |
| Moses v City of Huntington Beach<br>30-2012-00540509 | 05-2013 Trial |
| Simpson v County of Los Angeles<br>TC 025257 | 05-2013 Trial |
| Mohoff v City of Huntington Beach<br>30-2012-00541748 | 06-2013 Deposition |
| Isaiah Williams v D. Williams<br>4:07-CV-04464 CW | 07-2013 Trial |
| Slama v City of Madera<br>1:08-CV-0810 AWI | 08-2013 Trial |
| Moore v City of Atwater | 10-2013 Trial |

31

1:11-CV-01620 SMS

Feiman v City of Santa Monica                11-2013 Trial
CV 12-3549 JGB

Martin v City of Brea                        12-2012 Deposition
SACV 12-1846 JVS

Sarmiento v County of Orange                 01/2014 Trial
SACV-06-0586 DOC

Rogoff v County of San Bernardino            01/2014 Trial
CV-12-04218 DSF

Slaughter v City of Bakersfield              01/2014 Deposition
S-1500-CV-271472 LHB

Cota v County of Kern                        03/2014 Deposition
1:12-CV-01618 JLT