1 | LAW OFFICES OF DALE K. GALIPO
Dale K. Galipo, SBN 144074
2 | Eric Valenzuela, SBN 284500
21800 Burbank Blvd., Suite 310
3 | Woodland Hills, California 91367
Telephone:   (818) 347-3333
4 | Facsimile:   (818) 347-4118
dalekgalipo@yahoo.com
5 | evalenzuela@galipolaw.com

6 | Attorneys for *Plaintiffs*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GUILLERMO RAMIREZ, et al., | Case No. **CV 13-01615-MWF-AN** |
| Plaintiffs, | *Honorable Michael W. Fitzgerald* |
| vs. | **NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES** |
| CITY OF OXNARD, et al., | *[[Proposed Order], Declarations and attached exhibits filed concurrently herewith]* |
| Defendants. | Date:  August 24, 2015 Time:  10:00 a.m. Ctrm:  1600, Spring Street |

**TO DEFENDANTS AND THEIR ATTORNEYS OF RECORD HEREIN:**

   **PLEASE TAKE NOTICE** that on August 24, 2015, at 10:00 a.m. or as soon thereafter as this motion may be heard in the above-entitled Court, Plaintiffs R.R., Guillermo Ramirez and Teresa Ramirez will move this Court for an Order awarding reasonable attorney fees and costs pursuant to 42 U.S.C. § 1988 and California Rule of Court 3.1702.

Plaintiffs will request that the Court award attorneys' fees in the amount of $654,445. Further, Plaintiffs will request that the Court award attorneys' fees for work performed in connection with the instant motion for attorney fees, including after these papers are filed, as will be set forth in the reply papers and on any work done on post-trial motions filed by the Defendants.

This Motion is based on the grounds that the Plaintiffs were the prevailing parties at trial on their civil rights claims and are entitled to attorney fees as a matter of law under 42 U.S.C. § 1988. This Motion will be further based on this Notice of Motion, the attached Memorandum of Points and Authorities, the concurrently filed declarations, the attached exhibits, upon the pleadings on file herein, and upon such other oral and documentary evidence as may be presented at the time of the hearing.

DATED:  July 24, 2015                    LAW OFFICES OF DALE K. GALIPO


_____/s/ Eric Valenzuela_____
Dale K. Galipo
Eric Valenzuela
Attorneys for Plaintiffs

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION..... …………………….…………………6

II.   LEGAL STANDARD………………………..………………8

    A.   Legislative History of 42 U.S.C. § 1988………………8

    B.   California Courts Apply Supreme Court's Standard in
        Hensley v. Eckerhart…………………………………9

III.  ANALYSIS............……………………..…………11

    A.   Plaintiffs Are Entitled to Attorneys' Fees as the
        Prevailing Party………………………………………11

    B.   The Court Should be Guided by a "Lodestar"
        Computation……………………………………………12

        1.   Hourly Rate for Dale K. Galipo, Esq………….14
        2.   Hourly Rate for Eric Valenzuela, Esq…………..17

    C.   The Number of Hours Claimed is Reasonable………..19

    D.   Plaintiffs Are Entitled to Fees for Litigating the Instant
        Motion…………………………………………………20

IV.   CONCLUSION........……………………………………21

NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES

# TABLE OF AUTHORITIES

## Cases

*Bouman v. Block*, 940 F.2d 1211 (9th Cir. 1991) ........................................................10

*Brewster v. Dukakis*, 786 F.2d 16 (1st Cir. 1986) .....................................................11

*City of Burlington v. Dague*, 505 U.S. 557 (1992) ....................................................12

*City of Riverside v. Rivera*, 477 U.S. 561 (1986) ......................................................11

*Clark v. City of Los Angeles*, 803 F.2d 987 (9th Cir. 1986).....................................21

*Ellwest Stereo Theatre, Inc. v. Jackson*, 653 F.2d 954 (5th Cir. 1981)......................9

*Farrar v. Hobby,* 506 U.S. 103 (1992).......................................................................12

*Glass v. Pfeffer*, 849 F.2d 1261 (10th Cir. 1988) ......................................................21

*Guam Society of Obstetricians & Gynecologists v. Ada*, 100 F.3d 691 (9th Cir. 1996)...............................................................................................................10

*Harman v. City and County of San Francisco*, 158 Cal.App.4th 407 (2007)...........11

*Henlsey v. Eckhart*, 461 U.S. 424 (1983) ..............................................................9, 12

*Hernandez v. George*, 793 F.2d 264 (10th Cir. 1986)...............................................21

*Hernandez v. Kalinowski*, 146 F.3d 196 (3rd Cir. 1998) ..........................................21

*L.H., et. al. vs. Schwarzenegger*, 645 F.Supp.2d 888  (E.D. Cal.2009) ...................14

*Lund v. Affleck*, 587 F.2d 75 (1st Cir.1978) ..............................................................21

*Odima v. Westin Tucson Hotel*, 53 F.3d 1484 (9th Cir. 1995)..................................10

*Premier Medical Management Systems. Inc. v. California Ins. Guarantee Assn.*, 163 Cal.App.4th 550 (2008).................................................................................13

*Serrano v. Unruh*, 32 Cal.3d 621 (1982)..................................................................10

*Sethy v. Alameda County Water Dist.*, 602 F.2d 894 (9th Cir. 1979) ........................9

*Texas Teachers v. Garland School Dist.* 489 U.S. 782 (1989) .................................12

*Trevino v. Gates*, 99 F.3d 911 (9th Cir. 1996) .........................................................13

*United Steelworkers of Am.v. Phelps Dodge Corp.*, 896 F.2d 403 (9th Cir. 1990) ..14

*Ustrak v. Fairman*, 851 F.2d 983 (7th Cir. 1988) .....................................................11

<u>Statutes</u>

42 U.S.C. §1988.........................................................................................8

<u>Other</u>

Legislative History of Section 1988, S. Rep. No. 94-1011, 94th Cong. 2d Session,
reprinted in 1976 U.S. Code Cong. & Ad. News 5908....................................9

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

The verdict of July 1, 2015, marked the culmination of an extensive three-year campaign to vindicate the constitutional rights of Decedent Robert Ramirez ("Decedent") and the rights of the Plaintiffs who are the minor child and parents of Decedent.  In the course of litigation, Plaintiffs' case attracted significant public concern and attention, and their victory was widely reported in the media.

R.R., Guillermo Ramirez and Teresa Ramirez ("Plaintiffs") brought the instant action against Defendants City of Oxnard and City of Oxnard Police Department Officers Steven Ramirez, Michael Bocanegra, Roslynn Wilfert, Pedro Rodriguez, Aaron Zavala, Kyle Brantner, and Matthew Ross ("Defendants") on March 6, 2013.  Plaintiffs claimed that Decedent died as a result of the excessive force and improper restraint used by the involved officers while taking Decedent into custody on the night of June 23, 2012.  The medical examiner who performed the autopsy found that the Decedent's manner of death was a homicide and the cause of death was asphyxia from active prone restraint (restraint asphyxia).

This was an extremely difficult case due to the large amount of drugs Decedent had ingested, allegedly an "eight ball" or 3.5 grams.  Moreover, Defendants hired three separate medical experts to all say that Decedent died from the drugs he ingested and not from the restraint used by the involved officers. Further, no settlement offer was made by the Defendants and Defendants declined numerous attempts throughout the trial to try to settle the matter.  This case was so difficult that the two separate law firms, which previously represented the Plaintiffs, both indicated they would not take the case to trial, which is why the Law Offices of Dale K. Galipo was substituted into the case shortly before it was first set to go to trial.

This difficult and complex case was vigorously defended by the City of Oxnard and the named officers.  All seven defendant officers claimed that they did

1   not improperly restrain the Decedent as he lay prone face down on the ground.

2   Police practices expert Curtis Cope opined that the officers acted consistent with

3   police training and POST standards.  The officers' account of the incident was

4   contradicted by the physical evidence, the audio recordings from involved officers'

5   PUMA recorders, the medical evidence, and the testimony of eyewitnesses.  The

6   jury ultimately rejected the defendants' theory of the case and the testimony of the

7   officers and returned a verdict for Plaintiffs.

8          The Law Offices of Dale K. Galipo agreed to take over the handling of this

9   matter in January 2015, after reviewing the case materials for a couple of months

10   (beginning in November 2014).  Plaintiffs' current attorneys were officially

11   substituted into the case on February 3, 2015, the same day as the first Pre-Trial

12   Conference.  Plaintiffs' attorneys have worked diligently to address the problems

13   and issues that they inherited. Plaintiffs' attorneys successfully moved to re-open

14   limited discovery to designate a police practices expert Roger Clark and Plaintiffs'

15   attorneys successfully amended the previously lodged Proposed Pre-Trial

16   Conference order which enabled Plaintiffs to preserve their negligence claim.

17   Further, in addition to the Pre-Trial Conference Order, Plaintiffs' attorneys had to

18   amend almost all of the previously filed pre-trial documents, such as the verdict

19   form, the statement of the case, the witness list, the exhibit list and the jury

20   instructions.  Since Plaintiffs did not retain any medical experts and Defendants

21   retained three separate medical experts, who all opined that the cause of death was

22   due to the drugs Decedent ingested, Plaintiffs' lead trial counsel worked hard, given

23   his trial experience and ability, in effectively cross-examining the three retained

24   medical experts.  Finally, Plaintiffs' attorneys successfully litigated issues related to

25   the pleadings at trial.  In the final analysis, without the incentive provided by 42

26   U.S.C. § 1988, few attorneys would be willing to step in on such a difficult case

27   with so many obstacles to success.

28

Litigating police misconduct cases requires experience and an understanding of issues that are unique to civil rights victims as compared to general civil practice. Even experienced civil rights attorneys have difficulty overcoming the built-in bias favoring the police on the part of many jurors. Given that lawsuits to vindicate constitutional rights are in the public interest, Congress passed 42 U.S.C. §1988 to encourage attorneys to undertake such otherwise difficult and unprofitable cases. This statute allows recovery of reasonable attorneys' fees to attorneys who prevail in § 1983 cases.

The favorable trial result in this case on Plaintiffs' civil rights claims was the product of a tremendous amount of hard work and skill on the part of Plaintiffs' counsel in preparing and presenting this case at trial. Because Plaintiffs prevailed on their civil rights claims, they are entitled to an award of reasonable attorney fees pursuant to 42 U.S.C. § 1988. Itemizations of the requested attorneys' fees have been filed concurrently herewith.

The reasonableness of Plaintiffs' fee request is supported by the declarations and exhibits attached thereto, which are filed concurrently herewith and incorporated herein by reference.

## II.   LEGAL STANDARD

### A.   Legislative History of 42 U.S.C. § 1988

The Civil Rights Attorney's Fees Awards Action of 1976, codified as 42 U.S.C. § 1988, was enacted to encourage skillful and experienced attorneys to undertake difficult civil rights cases. That law provides in relevant part as follows:

> In any action or proceeding to enforce a provision of sections 1981, 1981(a), 1982, 1983, 1985 and 1986 of this title, title IX of Public Law 92-318, [or]…title VI of the Civil Rights Act of 1964, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fees as part of the costs…

The legislative history of § 1988 confirms that the public policy behind the statute was to induce competent counsel to undertake civil rights litigation by assuring them that they would be paid in the same manner as "is traditional with attorneys compensated by feepaying clients," even when the results obtained are entirely non-pecuniary or solely of nominal pecuniary value. *See* Legislative History of Section 1988, S. Rep. No. 94-1011, 94th Cong. 2d Session, reprinted in 1976 U.S. Code Cong. & Ad. News 5908.

Given this purpose, courts have long established that although the statute appears to speak in permissive terms, a court's discretion to deny attorney's fees to a successful civil rights litigant is "exceedingly narrow." *See, e.g., Ellwest Stereo Theatre, Inc. v. Jackson*, 653 F.2d 954, 955 (5th Cir. 1981).  "Congress plainly intended that successful plaintiffs should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust."  *Sethy v. Alameda County Water Dist.*, 602 F.2d 894, 897 (9th Cir. 1979) (quotation marks omitted).

## B.   California Courts Apply Supreme Court's Standard in Hensley v. Eckerhart

In *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983), the Supreme Court held that the purpose of 42 U.S.C. § 1988 is to ensure effective access to the judicial process for persons with civil rights grievances. The public policy considerations behind § 1988 have been reiterated in many cases. The courts have repeatedly held that attorneys in civil rights suits are entitled to recover their full fees and costs if they achieve meaningful and substantial relief, even if they do not prevail on every theory or against every party. *Bouman v. Block*, 940 F.2d 1211, 1237 (9th Cir. 1991) (plaintiff proceeding under multiple theories for sex discrimination and prevailing on FEHA claims entitled to recover attorneys' fees). As the Supreme Court explained, "[l]itigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a

1  sufficient reason for reducing a fee. The result is what matters." *Hensley*, 461 U.S.

2  at 435. If the rule were otherwise, attorneys would be discouraged from taking on

3  high-risk cases such as this one. *Id.*; *see also Odima v. Westin Tucson Hotel*, 53 F.3d

4  1484, 1499 (9th Cir. 1995); *Serrano v. Unruh*, 32 Cal.3d 621 (1982); *Guam Society*

5  *of Obstetricians & Gynecologists v. Ada*, 100 F.3d 691, 700 (9th Cir. 1996)

6  (plaintiffs cannot be faulted for their thoroughness in pleading related claims).

> [T]he court must consider the significance of the overall relief obtained by the prevailing party in relation to the hours reasonably expended on the litigation and whether the expenditure of counsel's time was reasonable in relation to the success achieved." *Mann v. Quality Old Time Service, Inc.*, 139 Cai.App.4th 328, 344. The "'most critical factor'" in assessing the proper amount of attorney fees to award a prevailing party under 42 United States Code section 1988 is not strict proportionality, but rather the" 'degree of success obtained' " by the plaintiff. [citations] . . .
>
> A rule that limits attorney's fees in civil rights cases to a proportion of the damages awarded would seriously undermine Congress' purpose in enacting [42 United States Code section] 1988. Congress enacted [42 United States Code section] 1988 specifically because it found that the private market for legal services failed to provide many victims of civil rights violations with effective access to the judicial process. [Citation.] These victims ordinarily cannot afford to purchase legal services at the rates set by the private market ...
>
> Moreover, the contingent fee arrangements that make legal services available to many victims of personal injuries would often not encourage lawyers to accept civil rights cases, which frequently involve substantial expenditures of time and effort but produce only small monetary recoveries.' [Citation.]' A rule of proportionality would make it difficult, if not impossible, for individuals with meritorious civil rights claims but relatively small potential damages to obtain redress from the courts.' " *Graciano v. Robinson Ford Sales, Inc.*, 144 Cal.App.4th 140, 164, quoting *Riverside v. Rivera*, 477 U.S. 561, 576-578. Further, "a unifactor approach tying the number of hours accepted as reasonable" solely to the proportion of damages recovered "would be inconsistent with the statutory mandate that district courts exercise discretion by considering all factors relevant to reasonableness." *Cunningham v. County of Los Angeles*, 879 F.2d 481, 486.

23  *Harman v. City and County of San Francisco*, 158 Cal.App.4th 407,419-40 (2007)

24  (some citations and quotation marks omitted).

25  A fully compensatory fee is one that encourages the vindication of

26  constitutional and statutory rights through recovery of all costs and time spent on the

27  case, calculated at private market rates. It must ensure that attorneys are paid for all

28  the time they devote to the litigation. It is not limited by the number of causes of

action on which relief is awarded, or the amount of damages recovered. *See City of Riverside v. Rivera*, 477 U.S. 561, 581 (1986).  Parsing discrete issues according to their relative importance or outcome is disfavored because doing so would require the trial court to make mini-determinations of prevailing party status on each dispute. *See Brewster v. Dukakis*, 786 F.2d 16, 18 (1st Cir. 1986). Once a plaintiff has been determined to be the prevailing party, he is entitled to all reasonable time spent:

> Where "the plaintiff's claims of relief . . . involve a common core of facts or [are] based on related legal theories," so that "much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis, . . . the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation."

*Ustrak v. Fairman*, 851 F.2d 983, 988 (7th Cir. 1988) (quoting *Hensley*, 461 U.S. at 435 (1983)).

## III.   ANALYSIS

### A.   Plaintiffs Are Entitled to Attorneys' Fees as the Prevailing Party

Plaintiffs are considered the prevailing party, and may recover attorneys' fees, if they succeed on any significant issue in litigation that achieves some of the benefit sought in bringing the suit. *Hensley*, 461 U.S. at 433. The Supreme Court in *Texas Teachers v. Garland School Dist.* 489 U.S. 782, 792 (1989) expressly held that *Hensley* sets forth the appropriate test for determining a plaintiffs' prevailing party status with respect to 42 U.S.C. § 1988.  In determining whether a plaintiff has succeeded on any significant issue in litigation, the *Garland* Court looked at whether the relief on the merits of plaintiff's claim changes the legal relationship between plaintiff and defendant. Applying this test, the Court in *Farrar v. Hobby*, 506 U.S. 103, 114 (1992), held that a money judgment in favor of the plaintiff for

1  any amount modified the defendant's behavior in a way that benefits the plaintiff by

2  forcing the defendant to pay an amount that would otherwise not be paid.

3        Here, Plaintiffs prevailed on their excessive force claim, their 14th

4  Amendment interference with familial relationship claim and on their negligence

5  claim and were awarded significant monetary damages.  The jury awarded Plaintiffs

6  a total of $2,925,000.  This Court has entered an enforceable judgment [Doc. #188]

7  in favor of Plaintiffs in that amount.  Plaintiffs are clearly the prevailing party in the

8  litigation.

9      **B.**    **The Court Should be Guided by a "Lodestar" Computation**

10        The object of judicial fee determination is to simulate the results that would

11  be obtained if the lawyer were dealing with a paying client. The starting point in

12  achieving that objective is a determination of the "lodestar." The "lodestar" is the

13  product of hours reasonably expended on the case multiplied by the customary

14  hourly rates generally prevailing in the relevant community for services rendered by

15  similarly qualified attorneys. *Henlsey v. Eckhart*, 461 U.S. 424 (1983). Under

16  current law, the United States Supreme Court has sought to make uniform the

17  manner of determining what a "reasonable fee" is under a fee-shifting statute such

18  as 1988.  *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992).  As a general

19  proposition, the court adopted the position that "the 'loadstar' figure has, as its name

20  suggests, become the guiding light of our fee-shifting jurisprudence. We have

21  established a '*strong presumption*' that the lodestar represents a 'reasonable' fee . .

22  ." *Id*. (emphasis added).

23        Generally, "([a]n attorney's testimony as to the number of hours worked is

24  sufficient evidence to support an award of attorney fees, even in the absence of

25  detailed time records. (Citation omitted.) The trial court did not err in crediting the

26  attorney declaration here, which included detailed evidence of hours spent, tasks

27  concluded, and billing rates." *Steiny & Co. v. Cal. Elec. Supply Co.*, 79 Cal.App.4th

28  285, 293 (2000). "In challenging attorney fees as excessive because too many hours

of work are claimed, it is the burden of the challenging party to point to the specific items challenged, with a sufficient argument and citations to the evidence. General arguments that fees claimed are excessive, duplicative, or unrelated do not suffice." *Premier Medical Management Systems. Inc. v. California Ins. Guarantee Assn.*, 163 Cal.App.4th 550, 564 (2008).

In determining an attorney's reasonable hourly rate, "the court should be guided by the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Trevino v. Gates*, 99 F.3d 911, 925 (9th Cir. 1996) (internal quotations omitted). "[T]he proper reference point in determining an appropriate fee award is the rates charged by private attorneys in the same legal market as prevailing counsel . . . ." *Id*. (citing *Blum v. Stenson*, 465 U.S. 886, 895 (1984)).

The Los Angeles Daily Journal recently published a table entitled, "Average Law Firm Billing Rates" for three California metropolitan areas as well as nationally. This table, attached as Exhibit B to the Declaration of Dale K. Galipo ("Galipo Decl.), includes the following figures:

| Location | Position | 2012 | 2011 | Percent Increase |
|----------|----------|------|------|------------------|
| Los Angeles | Partner | $797 | $766 | 4.0% |
| | Associate | $550 | $516 | 6.6% |
| San Diego | Partner | $568 | $568 | 0% |
| | Associate | $394 | $378 | 4.2% |
| San Francisco | Partner | $675 | $654 | 3.2% |
| | Associate | $482 | $449 | 7.3% |
| National | Partner | $750 | $725 | 3.4% |
| | Associate | $495 | $460 | 7.5% |

NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES

Galipo Decl., Ex. B.  In *L.H., et. al. vs. Schwarzenegger*, 645 F.Supp.2d 888, 893 (E.D. Cal.2009), the court noted that "the relevant legal community is that in which the forum district is located" (citing *Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir.1992), and that a reasonable rate should reflect not only the market rates, but the skill and experience of the prevailing party's counsel.

"Affidavits of the plaintiffs' attorney… and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am.v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990).  The hourly rates for each of the attorneys who worked on the case are addressed in detail below:

### 1.        Hourly Rate for Dale K. Galipo, Esq.

With respect to Mr. Galipo's request of $900 per hour, his declaration and the supporting declaration attest to his accomplishments as a civil rights trial attorney. He has previously been awarded the rate of $800 per hour in four other civil rights cases in the last couple of years.  Here, Mr. Galipo is requesting $900 per hour because this was an extremely difficult case due to the large amount of drugs Decedent had ingested, allegedly an "eight ball" or 3.5 grams.  Moreover, Defendants hired three separate medical experts to all say that Decedent died from the drugs he ingested and not from the restraint used by the involved officers. Further, no settlement offer was made by the Defendants and Defendants declined numerous attempts throughout the trial to try to settle the matter.  This case was so difficult that the two separate law firms, which previously represented the Plaintiffs, both indicated they would not take the case to trial, which is why the Law Offices of Dale K. Galipo was substituted into the case shortly before it was originally set to go to trial.

Mr. Galipo graduated with a B.B.A. from the University of Michigan in Ann Arbor, Michigan in 1981.  He attended law school at UCLA from 1981 to 1984.

Galipo Decl. ¶ 6.  Since 1991, he has managed his own law firm specializing in major personal injury and wrongful death cases and criminal defense.  *Id.* ¶ 7.  Due to his experience in personal injury and criminal defense law and his significant trial experience, prosecuting civil rights actions involving police misconduct causing serious injury or death was a natural transition for him. *Id.*

Mr. Galipo has tried in excess of two hundred civil cases through verdict, including civil rights trials, medical malpractice cases, and a variety of serious personal injury cases.  *Id.* ¶ 8.  He has won the majority of his civil jury trials.   *Id.*

Mr. Galipo has also tried approximately fifty criminal felony cases including several homicide cases, attempted murder cases, robbery cases, and three-strikes cases.  *Id.* ¶ 9.  He has also won the majority of his criminal trials, including winning five homicide cases and numerous three-strike cases.  During one stretch from 1995 to 1996, Mr. Galipo won six felony trials in a row including two homicides, two robberies, and two three-strikes cases.  For his string of victories in three strikes cases, the Daily Journal dubbed him "The Strikes Man."  In June of 2005, he won an acquittal in a jury trial in a homicide case (*People v. Robert Vaughn*).  His client, Robert Vaughn, the co-founder of Von Dutch Clothing Company, was accused of homicide.  Mr. Vaughn admitted to the shooting, but claimed it was done in self-defense.  The jury acquitted Mr. Galipo's client in approximately three hours.  Mr. Galipo also prevailed in a homicide case in July of 2010 on the issue of self-defense.  *Id.*  A list of some of Mr. Galipo's accomplishments in civil rights cases in the last several years is included in his declaration at paragraph 10.

Mr. Galipo specializes in police misconduct civil rights litigation and takes on very difficult liability cases that require expertise in this area of law.  *Id.* ¶ 11.  He has been asked to speak at seminars on several occasions on various topics of civil rights litigation before the federal bar association.  *Id.*  He is routinely called for consultation by various civil rights attorneys throughout the state with regard to his

-15-

opinions and input on civil rights cases. *Id.*  In January of 2011, Mr. Galipo was one of the speakers and a civil rights symposium sponsored by the University of La Verne Law School. *Id.*  He spoke last year at the CAALA Convention in Las Vegas on civil rights. *Id.*  He also recently spoke at UC Irvine's law school about civil rights and he is scheduled to speak at a civil rights symposium in San Francisco in October. *Id.*  In addition, Mr. Galipo was recently awarded the Defender of the Constitution Award by the Inland Empire Chapter of the Federal Bar Association. Mr. Galipo was also nominated as a "superlawyer" for the years 2013, 2014 and 2015. *Id.*

Mr. Galipo has worked diligently on this case since November 2014, when he first agreed to review the case and ultimately agreed to accept the case from the previous attorneys who had decided to withdraw from the matter.  The extensive number of hours he worked on this case naturally precluded him from accepting other employment opportunities. *Id.* ¶ 12.  Based on the difficulty of this case and the skill, experience and ability necessary to prevail on this case, an hourly attorney fee rate for Mr. Galipo's services under the circumstances should be $900 per hour. *Id.* ¶ 13.

In the last couple of years Mr. Galipo was awarded the "lodestar" rate of $800 per hour in four civil rights cases based on police misconduct. *Id.* ¶16; Exs. C, D, E, F.  Mr. Galipo is requesting $900 per hour based on the extreme difficulties this case presented, his accomplishments as a civil rights attorney and trial lawyer, as well as the fact that a recent article in the Los Angeles Daily Journal indicated that average law firm partner billing rates in Los Angeles average $797 per hour.  *Id.*; Ex. B. Given that Mr. Galipo has his own law firm for 23 years, and has tried over 200 civil jury trials, he has more trial experience and expertise than most law firm partners in Los Angeles.  *See* Galipo Decl. ¶16; Ex. B.

## 2.   Hourly Rate for Eric Valenzuela, Esq.

A reasonable fee for the work Mr. Valenzuela performed on this case is at least $350 per hour.  See Galipo Decl., ¶15.

Mr. Valenzuela has spent 248.3 hours of billable time in connection with tasks reasonably necessary to the favorable resolution of this action. Declaration of Eric Valenzuela ("Valenzuela Decl.) ¶ 2.  Additional billable time spent in connection with this motion will be set forth in Plaintiffs' reply to the instant motion. *Id.* ¶ 3.

Mr. Valenzuela has been the associate with primary responsibility for the day-to-day management of this case since January 2015 through the present.  *Id.* ¶ 4. His work on this case included reviewing of the file and helping to develop a theory of the case, drafting motions to reopen discovery, handling the deposition of Plaintiffs' police practices expert Roger Clark, opposing Defendants' motion in limine to exclude certain opinions by Plaintiffs' police practices expert, preparing the pretrial documents, meeting with percipient witnesses, participating in formulating trial strategy, preparing trial witnesses, trial preparation, drafting the instant motion for attorneys' fees and anticipated post-trial motions. *Id.*  Mr. Valenzuela contemporaneously tracked his time in tenth of an hour increments, exercised billing judgment and excluded unproductive time and time spent on administrative or clerical tasks.  *Id.*  Mr. Valenzuela's contemporaneous time records are attached as an exhibit to his declaration. *Id.*; Ex. A.

Mr. Valenzuela was admitted to the California Bar in November 2012. Valenzuela Decl. ¶ 6.  Mr. Valenzuela is bilingual in English and Spanish. Valenzuela Decl. ¶ 7.   In this case many of the witnesses spoke only Spanish and many of the recorded interviews were conducted Spanish. *Id.* ¶ 7.   Mr. Valenzuela received his bachelor's degree from California State University, Los Angeles.   *Id.* ¶ 8.  He received his J.D. degree from the Southern California Institute of Law in

NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES

1   Ventura, California. *Id.*  In 2010, Mr. Valenzuela graduated Magna Cum Laude
2   from law school.  *Id.* ¶ 9.

3       In June 2008, while attending law school, Mr. Valenzuela began working at
4   the Law Offices of Dale K. Galipo. *Id.* ¶ 10.  Since he began working for Mr.
5   Galipo, Mr. Valenzuela has worked almost exclusively on 42 U.S.C. § 1983 civil
6   rights cases, involving police excessive force. *Id.*

7       Mr. Valenzuela became an associate attorney at the Law Offices of Dale K.
8   Galipo in November of 2012. *Id.* ¶ 11.

9       Since Mr. Valenzuela began working at the Law Offices of Dale K. Galipo,
10  he has gained substantial experience in civil rights litigation in all its aspects, from
11  case evaluation through to trial.  *Id.* ¶ 12.  Mr. Valenzuela has successfully drafted
12  numerous oppositions to motions for summary judgment in the Central District, as
13  well as other federal districts throughout California, including such cases as: *A.K.H.*
14  *v. City of Tustin*, Case No. SACV 12-01547 JST (C.D. Cal. 2014); *M.R. v. City of*
15  *Azusa*, Case No. 13-01510 DMG (C.D. Cal. 2014); *Adam v. Cnty. of Los Angeles*,
16  Case No. 13-1156 GW (C.D. Cal. 2014); and *Manning v. City of San Diego,* Case
17  No. 11 CV 435 W (S.D. Cal. 2013). *Id.* ¶ 12.  Mr. Valenzuela has personally
18  handled numerous mediations and settlement negotiations; depositions of witnesses,
19  including experts; motions at all stages, including oral argument; trial preparation;
20  and he has worked alongside Mr. Galipo at trial. *Id.* ¶ 12.  Mr. Valenzuela has also
21  personally handled appeals to the Ninth Circuit Court of Appeals in cases such as
22  *A.K.H. v. Villarreal*, Case No. 14-55184 and *Newmaker v. City of Fortuna, et al*,
23  Case No. 14-15098. *Id.*  Mr. Valenzuela is currently responsible for day-to-day
24  management of approximately fifteen federal civil rights cases. *Id.* ¶ 12.  In most of
25  these cases, the alleged civil rights violation has resulted in death. *Id.*
26      In addition to this case, Mr. Valenzuela is currently the associate with primary
27  responsibility for the day-to-day handling of other civil rights cases which have
28

received significant media attention such as: *Opsitnick, et al. v. City of Long Beach, et al.,* Case No. CV 14-9370 PLA (C.D.Cal. 2015), which involved the LBPD shooting of an unarmed man, which was caught on video; and *Avelar v. County of Los Angeles,* Case No. CV 15-02756 DMG (C.D.Cal. 2015), which involved the Sheriff's department fatally shooting two people. *Id.* ¶ 13.

This was an extremely difficult case due to the large amount of drugs Decedent had ingested, approximately an "eight ball" or 3.5 grams. Moreover, Defendants hired three separate medical experts to all say that Decedent died from the drugs he ingested and not from the restraint used by the involved officers. Further, no settlement offer was made by the Defendants and Defendants declined numerous attempts throughout the trial to try to settle the matter. This case was so difficult that the two separate law firms, which previously represented the Plaintiffs, both indicated they would not take the case to trial, which is why the Law Offices of Dale K. Galipo was substituted into the case shortly before it was originally set to go to trial. Due to the extreme difficulty of this case, a great risk was taken in spending so many hours dedicated to this matter and any award for attorney's fees should reflect that to encourage other attorneys to participate in very difficult cases involving police misconduct.

Given Mr. Valenzuela's education, skill, ability, and experience in civil rights litigation at the highest level, the Court should award attorney's fees for his work performed at the rate of at least $350 per hour.

## C.     The Number of Hours Claimed is Reasonable

Plaintiffs' total basic lodestar fees, determined by multiplying the number of hours expended by the hourly rate of each attorney are as follows:

| Attorney | Rate | Hours | Total |
|----------|------|-------|-------|
| Dale K. Galipo | $900 | 630.6 | $567,540 |

| Eric Valenzuela | $350 | 248.3 | $86,905 |
| --- | --- | --- | --- |
| | | Total: | $654,445 |

The extensive work undertaken by Plaintiffs' counsel in taking over this case and working it up for trial is listed in the compilation of time records attached to the declarations of the above attorneys. All times listed in the time records were reasonably spent in securing a successful outcome in this case.

Prior to filing this motion, as set forth in the attached declarations, the attorneys involved have reviewed their records and exercised billing judgment and written off time spent on administrative or semi-clerical tasks, or tasks that were not sufficiently productive. They have made their best efforts to exclude work that would not be billed to an ordinary fee-paying client. The action was litigated efficiently and expeditiously, without needless expenditure of time or unnecessary work as evidenced by the efficiency of the trial.

Police misconduct lawsuits advance the significant public benefit of deterring abuse by law enforcement officers who would otherwise operate free of any meaningful restraints. This case underscores the fact that, but for the diligent efforts of civil rights attorneys, police misconduct can go unaddressed and without consequences. The work that Plaintiffs' attorneys did in this case is in the public interest.

**D.    Plaintiffs Are Entitled to Fees for Litigating the Instant Motion**

In addition to the attorneys' fees derived from legal work performed in preparing and litigating a case, Plaintiffs are entitled to attorneys' fees for their time spent establishing their right to attorneys' fees in the amount requested.   *See Clark v. City of Los Angeles*, 803 F.2d 987, 992 (9th Cir. 1986) ("We, like every other court that has considered the question, have held that the time spent in establishing entitlement to an amount of fees awardable under section 1988 is compensable.");

*see also Hernandez v. Kalinowski*, 146 F.3d 196, 199 (3rd Cir. 1998); *Glass v. Pfeffer,* 849 F.2d 1261, 1266 (10th Cir. 1988); *Hernandez v. George*, 793 F.2d 264, 269 (10th Cir. 1986); *Lund v. Affleck*, 587 F.2d 75, 77 (1st Cir.1978) ("It would be inconsistent with the purpose of the Fees Act to dilute a fees award by refusing to compensate the attorney for the time reasonably spent in establishing and negotiating his rightful claim to the fee."). Plaintiffs are also entitled to fees for time spent opposing any subsequent post-trial motions by Defendants.

Plaintiffs' counsel will include in the compilation of the total hours associated with the instant motion, including a time estimate regarding preparation for and appearance at any future hearings, in their reply brief.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully requests that the Court award attorneys' fees in the amount of $654,445. Finally, Plaintiffs request that the Court award attorneys' fees for work performed in the litigation of the instant motion for attorney fees, including after these papers are filed, as will be stated in the reply papers.

DATED: July 24, 2015          LAW OFFICES OF DALE K. GALIPO

By_____/s/ Eric Valenzuela_____
Dale K. Galipo
Eric Valenzuela
Attorneys for Plaintiffs