```
1  BRIAN A. VOGEL, SBN 167413
   THE LAW OFFICES OF BRIAN A. VOGEL, PC
2  770 County Square Drive, Suite 104
   Ventura, California 93003
3  Telephone:  (805) 654-0400
   Facsimile:  (805) 654-0326
4  Email:      brian@bvogel.com
   Attorney for Plaintiff R.R., by and through his
5  Guardian Ad Litem, ANTONIO CERVANTES
```

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GUILLERMO RAMIREZ, et al., <br><br> Plaintiffs, <br><br> vs. <br><br> OXNARD POLICE DEPARTMENT, et al, <br><br> Defendants. | CASE NO. CV 13-1615-MWF (ANx) <br><br> **PLAINTIFF R.R.'S NOTICE OF MOTION AND MOTION FOR ATTORNEYS FEES AND COSTS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; PROPOSED ORDER** <br><br> [Declarations of Brian A. Vogel, Heather Quest, Steve Marshall and [Proposed] Order filed concurrently herewith] <br><br> Date: August 24, 2015 <br> Time: 10:00 a.m. <br> Ctrm: 1600 |

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that Plaintiff R.R., by and through his Guardian Ad Litem, ANTONIO CERVANTES, will move the above entitled court on August 24, 2015, at 10:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 1600 of the United States Courthouse, 300 N. Spring Street, Los Angeles, CA 90012, for an order awarding attorneys' fees and costs pursuant to 42 U.S.C. §

PLAINTIFF R.R.'S NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES AND COSTS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

1

1988(b). The motion will be made on the ground that Plaintiff R.R., by and through his Guardian Ad Litem, ANTONIO CERVANTES, is entitled to an award of reasonable attorneys' fees and expenses and the amount sought is reasonable.

The motion will be based upon this Notice of Motion, the Memorandum of Points and Authorities that accompanies this Motion, the Declarations of Brian A. Vogel ("BV Decl."), Heather A. Quest ("HQ Decl."), Steve C. Marshall ("SM Decl."), and all papers and records on file in this case, and any additional matter that may be presented at or before the hearing.

This motion is made following a telephone call to opposing counsel, Dirk Degenna, on July 24, 2015. Because counsel for Plaintiff R.R. was unaware of the final attorney fee and cost figures for the other two Plaintiff's firms, and because defense counsel could not immediately obtain settlement authority for only one firm's fees and costs, meaningful settlement discussions proved impossible. See Declaration of Brian A. Vogel, ¶ 2.

Respectfully submitted,

Dated: July 24, 2015         LAW OFFICES OF BRIAN A. VOGEL, PC

By: _____
BRIAN A. VOGEL, Attorney for Plaintiff R.R., by and through his Guardian Ad Litem, ANTONIO CERVANTES

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiffs R.R. and Teresa and Guillermo Ramirez achieved an improbable victory when a unanimous jury awarded them $2.9 million in damages after finding that Defendants were negligent and used excessive force against Robert Ramirez which resulted in his death. This sum is impressive in light of the existence of what seemed to be, at first blush, considerable challenges in the case, including the high number of defendants, the perception that law enforcement officers always tell the truth, and the difficulty in finding percipient witnesses willing to come forward. There also was the potential that a jury would find that Robert Ramirez caused his own death and died of complications from a methamphetamine overdose, rather than from restraint asphyxiation during a struggle with police. Plaintiff R.R.'s counsel, The Law Offices of Brian A. Vogel, P.C. ("BAV Firm") took on this case together with co-counsel Ron Bamieh and David Ring of Bamieh & Erickson beginning in the latter half of 2012, well before the recent incidents of police brutality were covered by the media and captured the nation's attention. Bamieh & Erickson did an excellent job in investigating the case, consulting with expert witnesses and deposing the most important witness in the case, the coroner, Dr. O'Halloran. The BAV Firm was responsible for the vast majority of the pleadings including the opposition to Defendants' Motion for Summary Judgment and most of the remaining depositions from the inception of the case until just before trial, when the Law Offices of Dale K. Galipo took on the matter for trial. (See BV Decl., ¶¶16, 22)

BAV Firm accepted this case on a contingent basis, placing hundreds of hours and thousands of dollars at risk. BAV Firm accepted the case only after careful review because, due to his experience in the field, he recognized the importance of

such a case being brought against law enforcement officers. As a result, Plaintiff received the benefit of representation from a highly-regarded civil rights firm. Congress included fee shifting for § 1983 claims in hope that lawyers such as Plaintiffs' counsel would take on risky civil rights cases and vigorously pursue them. See *Clark v. City of Los Angeles*, 803 F.2d 987, 991 (9th Cir. 1986). Those incentives worked here, and Plaintiff respectfully requests reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

## II. BACKGROUND OF THE CASE

After over two years of litigation and a trial, the jury found in favor of each of the three Plaintiffs - R.R., the minor son of the decedent Robert Ramirez and Teresa and Guillermo Ramirez, the parents of Robert Ramirez. The jury found that Defendant Steven Ramirez used excessive use of force on Robert Ramirez and that that use of force was a substantial factor in Robert Ramirez's death. The jury further found that all 7 of the Defendant officers violated Plaintiffs' constitutional rights by interfering with their familial relationship with the decedent. Both of these claims for relief were brought pursuant to 42 U.S.C. § 1983 which allows for fees and costs to a prevailing party. The jury also found that all seven officers were negligent in their contact with Robert Ramirez. The jury awarded significant compensatory damages totaling $2.925 million, broken down as follows: $75,000 for injuries sustained by Robert Ramirez himself, $1.6 million for Plaintiff R.R., $625,000 for Guillermo Ramirez, and $625,000 for Teresa Ramirez.

Plaintiffs could not have prevailed, or achieved the same degree of success, without full investment in the case. Proving the allegations in this matter was no easy task.

Defendants aggressively litigated the case and refused to offer Plaintiffs any money at all to settle the case, forcing Plaintiffs to ramp up for trial. Plaintiffs

PLAINTIFF R.R.'S NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES AND COSTS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

4

repeatedly expressed a willingness to consider a reasonable settlement amount. Defendants, on the other hand, did not make any settlement offers throughout the litigation. Defendants ignored all resolution efforts, forcing the attorneys to incur substantial fees and costs.(BV Decl., ¶ 17)

## III. PLAINTIFF R.R. IS ENTITLED TO ATTORNEYS FEES UNDER 42 U.S.C. § 1988.

The prevailing plaintiff in a civil rights case brought pursuant to 42 U.S.C. § 1983 is entitled to recover reasonable attorneys' fees. *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983); *Thomas v. City of Tacoma*, 410 F.3d 644, 647-49 (9th Cir. 2005)("To deny an award of attorney's fees notwithstanding Plaintiffs' clear victory on one of his claims for relief is an abuse of discretion.").

## IV. PLAINTIFF R.R.'S COUNSEL'S TIME AND EFFORT IN THIS ACTION JUSTIFIES THE AMOUNT OF ATTORNEY'S FEES REQUESTED

A. **Summary of Legal Principles Governing Attorney Fee Motions**.

Calculation of reasonable attorneys' fees is accomplished by using the "lodestar" method. *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008). The lodestar is calculated by multiplying the number of hours counsel reasonably expended on the litigation by a reasonable hourly rate. *Id.* There is a "strong presumption" that this lodestar amount constitutes a reasonable fee. *Burlington v. Dague*, 505 U.S. 557, 562 (1992). The documentation to support the amount of work done "need not be exhaustive or in minute detail, but must inform the court, in addition to the number of hours worked, of the type of work performed and the category of attorney who performed the work (i.e. senior partner, associate, etc." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1985). Hours eligible for attorneys' fees are those reasonably spent on the litigation and not

considered excessive, duplicative, or inadequately documented. *Hensley, supra*, 461 U.S. at 432-434. Although contemporaneous time records may be submitted to document the number of hours expended, the Ninth Circuit has clearly established that an award may be based upon the affidavits of counsel, so long as they are "sufficiently detailed to enable the court to consider all of the factors necessary in settling the fees. *Williams v. Alioto*, 625 F.2d 845, 849 (9th Cir. 1980)(per curium); see also *Sablan v. Department of Fin. Of N. Mariana Islands*, 856 F.2d 1317, 1322 (9th Cir. 1988)(finding counsel's affidavit "sufficiently detailed to provide an adequate basis for calculating the award").

Where a plaintiff asserts "numerous legal theories against several defendants," the claims are sufficiently related where "all of his claims arose out of a common core of facts and a common course of conduct: Plaintiff's arrest, detention, and prosecution." *Webb v. Sloan*, 330 F.3d 1158, 1169 (9th Cir. 2003). The court noted that "[o]ften, related claims involve both a common core of facts and related legal theories. [citation[]] However… we have not required commonality of both facts and law before concluding that unsuccessful and successful claim are related." *Id.* at 1168. Indeed, to be severable, the claims must be "entirely distinct and separate." *Id.* at 1169. Here, all of Plaintiffs' claims were interrelated, based upon the same incident - the deadly restraint used by all seven individual defendants.

In exceptional cases, the lodestar figure may be adjusted upward or downward. *Clark, supra*, 803 F.2d at 991. Plaintiffs' counsel is also entitled to recover "those out-of-pocket expenses that would normally be charged to a fee paying client." *Dang v. Cross*, 422 F.3d 800, 814 (9th Cir. 2005). Plaintiff has the burden to support the requested amount, making a good faith effort to exclude hours and costs that are unreasonable. *Hensley, supra*, 461 U.S. at 429 (1983).

///

B. **Summary Table of Fees and Costs Sought by BV Firm.**

The following table sets forth BV Firm's requested lodestar figures. Plaintiff's counsel has attested in their declaration that the hours set forth below are accurate and truthful. (BV Decl., ¶¶3, 18, 22-25, HQ Decl.,¶¶ 10-11, SM Decl., ¶¶ 7-8, Ex.1

| Attorney/Staff | Years In Practice | Hours Worked (Merits) | Hours Worked (Fees Motion) | Rate Requested | Lodestar Total |
|---|---|---|---|---|---|
| Brian A. Vogel | 22 | 445.95 | 12.20 | $700 | $320,705 |
| Heather A. Quest | 17 | 463.35 | 18.25 | $500 | $235,800 |
| Steve C. Marshall | 2.5 | 63.60 | 3.40 | $300 | $20,100 |
| Paralegals | 22/11 | 102.1 | 4.0 | $200 | $21,220 |
| Total: | | | | | $597,825 |

Although BAV firm has refrained from billing numerous hours as set forth in BV Declaration ¶ 24, if the court applies a 3% reduction to account for arguably duplicative work, Plaintiff BAV firm's total attorney fee award would be $579,890.25.

If the court chooses to award BAV firm's requested Lodestar Multiplier of 1.5, the total attorney fee award would be $896,737.50.

Plaintiffs are also requesting $4,379.48 in costs (in addition to the $10,682.52 in costs included in Plaintiff R.R.'s Bill of Costs) which are compensable under federal law. The following table provides a summary of the costs claimed by Plaintiffs. The cost details are attached to the Declaration of Brian A. Vogel as Exhibit 2 (Plaintiff R.R.'s Additional Costs).

PLAINTIFF R.R.'S NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES AND COSTS
AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
7

| Costs | |
|---|---|
| **Cost Type** | |
| Filing Fees | $350.00 |
| Fees for Service of Process | $500.00 |
| Depositions | $9,473.40 |
| Witness Fees | $89.13 |
| Consultants | $1,500.00 |
| Attorney Service | $59.50 |
| Postage | $232.46 |
| Investigators | $1,750.00 |
| Distance Travel | $329.51 |
| In House Photocopies | $778.00 |
| **SUBTOTAL** | $15,062.00 |
| **BILL OF COSTS** | -$10,682.52 |
| **TOTAL:** | $4,379.48 |

### C. BV Firm's Lodestar is Reasonable.

In *Hensley*, the U.S. Supreme Court expressly approved of the following 12 factors in determining a reasonable lodestar figure: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent;1 (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

PLAINTIFF R.R.'S NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES AND COSTS
AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

8

*Hensley, supra*, 461 U.S. at 430 n.3; accord *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975).

Courts have subsequently held that certain *Hensley* factors, such as the undesirability of the case, the preclusion of employment by the attorney due to the demands of the case, and the potential for receiving no payment, should be considered separately to determine if a lodestar multiplier is warranted. See *Clark*, 803 F.2d at 991-92. The remaining *Hensley* factors, however, are "subsumed" in the lodestar calculation and are therefore relevant in the instant analysis. See *Blum v. Stenson*, 465 U.S. 886, 898-900 (1984); *Pelletz v. Weyerhaeuser Co.*, 592 F. Supp. 2d 1322, 1327 (W.D. Wash. 2009) (applying *Kerr* factors). Application of the "subsumed" factors favors a lodestar multiplier for Plaintiffs' counsel in this case.

### 1. The Degree of Success Is the Most Critical Factor Supporting the Fee Request.

The U.S. Supreme Court has made clear that "the most critical factor" in determining reasonableness of the fee award "is the degree of success obtained." *Farrar v. Hobby*, 506 U.S. 103, 114 (1992) (quoting *Hensley*, 461 U.S. at 436). Under any standard, the $9 million verdict in this difficult case was an objective and unmitigated success for Plaintiff. Because Plaintiff obtained "excellent results" and all of Plaintiffs' claims arose out of the same common facts, Plaintiffs' attorneys should recover a fully compensatory fee. See *Hensley, supra*, 461 U.S. at 435; *Webb, supra*, 330 F.3d at 1168-69) (counsel entitled to fees for hours spent on all claims, even if not all were successful, where claims arose from common facts related to detention and prosecution).

### 2. This Matter Presented Novel and Difficult Questions.

The claims raised and proven by counsel, while not necessarily novel, were complex and difficult to prove. Factually, the case was difficult for Plaintiffs to

prove because, based on what has been characterized as a "code of silence," each of the officer defendants sought to describe Plaintiffs' decedents' background and conduct in the most threatening way possible in order to justify each defendant's use of force. The Oxnard Police Department, the FBI, and the Ventura County District Attorney's Office each conducted investigations and concluded, in essence, that the officers acted within policy, acted in accordance with their training, and were not not responsible for Mr. Ramirez' death. It was also true that Robert Ramirez was an individual for whom it would prove to be difficult to generate much sympathy. Mr. Ramirez was a former gang member on parole who had told the 911 caller that he had voluntarily swallowed an "eightball" of meth prior to being contacted by the police. Shortly after his death, his rectal temperature was measured at 105 degrees Fahrenheit. Furthermore, in an unprecedented move, the Ventura County District Attorney's Office hired a second pathologist to undermine the finding of their very well respected County Coroner, Dr. O'Halloran who had opined that the death was a homicide and the primary cause of death was asphyxiation. The new expert, Dr. Sheridan, opined that Mr. Ramirez was not asphyxiated and that his death was accidental and due to methamphetamine toxicity with all of the features of Excited Delirium Syndrome. Dr. Sheridan also opined that Mr. Ramirez would have died from a sudden cardiac arrhythmia or hypothermia even in the absence of any police officer involvement. To overcome these issues, it was necessary for our team to carefully review and undermine the findings of the investigations conducted by each of these agencies and their investigators and experts. Our team had to carefully review every piece of evidence and every prior statement and report to prepare for each of the fifteen depositions which we took in this case. We also had to consult with experts in pathology, police use of force, and review extensive scientific literature regarding methamphetamine toxicity, asphyxia, hypothermia and

arrhythmia in order to prove causation in this case.(BV Decl., ¶ 16(c))

### 3. Experience, Skill and Reputation of Counsel Justifies the Lodestar.

In calculating reasonable hourly rates, courts pay particular attention to "the experience, skill, and reputation of the attorney requesting fees." *Schwarz v. Sec'y of Health & Human Servs.*, 73 F.3d 895, 906 (9th Cir. 1995). The successful prosecution of the complex claims asserted by Plaintiff required the work of highly skilled and specialized attorneys. As detailed below and in the supporting declarations, Plaintiff R.R.'s lead counsel are highly experienced litigators in the fields of complex civil litigation, civil rights and police misconduct cases. (BV Decl., ¶¶ 6-12, HQ Decl. ¶¶ 2-9) Based on Plaintiff R.R.'s counsel's diligent and extensive efforts, Plaintiff R.R.'s counsel was instrumentally in securing a $2.95 million verdict in favor of Plaintiffs.

The work performed by BAV Firm has included: (1) extensive investigation of the underlying circumstances; (2) legal research into complex procedural and substantive legal issues; (3) preparing the 910 Claim and the pleadings; (4) propounding written discovery; (5) meeting and conferring regarding discovery disputes; (6) taking numerous depositions; (7) analysis of the documents and data produced; (8) drafting of stipulations and proposed orders; (9) handling the overall scheduling and strategy of pre-trial litigation; (10) working with experts; (11) engaging in settlement negotiations and the settlement conference; (12) opposing the motion for summary judgment; (13) preparing and filing all the documents necessary for the Pre-Trial conference; and (14) Preparing the case for trial. (BV Decl., ¶¶ 15-16, HQ Decl. ¶ 10, Ex. 1)

Mr. Vogel has been practicing law for 22 years. He is a 1993 graduate of Loyola Law School, a certified criminal law specialist, and a former Ventura County senior deputy public defender. As a public defender, he obtained a substantial

PLAINTIFF R.R.'S NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES AND COSTS
AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
11

amount of training and experience in investigation, preparation and presentation of evidence, trial planning and tactics, and client relations. He participated in approximately 70-100 jury trials of which approximately half were felony trials. (BV Decl., ¶¶ 6-7)

Mr. Vogel is the recipient of numerous awards for his work as an attorney, including the Ventura County Criminal Defense Bar Association Crime Lab Crusader Award and the Ventura County Criminal Defense Bar Association Richard Erwin Award which is the equivalent of "Trial Lawyer of the Year" for the defense bar in Ventura County. (BV Decl., ¶ 8) Mr. Vogel was initially certified as a Specialist in Criminal Law by the State Bar of California Board of Legal Specialization in 2010, and he was recently recertified for an additional five years from April 2015 through April 2020. He is also certified as a Specialist in Criminal Trial Advocacy by the National Board of Trial Advocacy. He has qualified and testified as an expert pursuant to *Strickland v. Washington,* (1984) 466 U.S. 668 regarding the objective standard of reasonableness required for competent defense counsel in the case *People v. Murat Aksu*, Ventura County Superior Court Case no. 2010021861. He is currently the President of the Ventura County Criminal Defense Bar Association for 2014-2015 and is "AV" rated by Martindale-Hubbell.(BV Decl., ¶ 10)

After leaving the Public Defender's Office, Mr. Vogel formed the Law Offices of Brian A. Vogel, PC in Ventura, California in 2007. Early on, he expanded his practice to include civil litigation with an emphasis on civil rights cases brought pursuant to 42 U.S.C. § 1983. Mr. Vogel has successfully litigated numerous police misconduct actions, and has recovered more than two million dollars for his clients by way of settlements, attorney's fee awards and jury verdicts. (BV Decl., ¶ 9, 11-12). His extensive experience is set forth at length in his

declaration and support the requested rate of $700 per hour. See Declarations of Brian Vogel, Barrett Litt, Mark Pachowicz and David McClane filed concurrently herewith.

Heather A. Quest works as an associate attorney for the Law Offices of Brian A. Vogel, P.C. Ms. Quest provided Mr. Vogel with substantial assistance throughout the litigation of this matter. As noted in her declaration filed concurrently with this petition, Ms. Quest is requesting a billing rate of $500 per hour which is a rate consistent with those attorneys of comparable experience practicing complex civil rights litigation and comparable expertise and skill in the Los Angeles legal community. Ms. Quest became a member of the California Bar in 1996 and has substantial experience litigating civil rights cases in both federal and state court. She has tried and won a federal trial and has handled numerous employment law class actions in both state and federal court. Her extensive experience is set forth at length in her declaration and supports the requested rate of $500 per hour. (BV Decl., ¶ 19; HQ Decl., ¶¶ 2-11)

In addition, BAV Firm employed an attorney named Steve Marshall who passed the bar in December 2012. Mr. Marshall provided valuable work on the matter. As noted in his declaration filed concurrently with this petition, Mr. Marshall is requesting a billing rate of $300 per hour which is a rate consistent with those attorneys of comparable experience practicing complex civil rights litigation, comparable expertise and skill in the Los Angeles legal community. Mr. Marshall became a member of the California Bar in 2012 and has experience litigating civil rights cases in both federal and state court. His experience is set forth in his declaration and supports the requested rate of $300 per hour. (SM Decl. ¶¶5-6)

In summary, Plaintiffs' counsel have years of experience in the civil rights field, they have obtained multiple settlements and awards for their clients, and they

are highly regarded in their profession. The verdict in this difficult case affirms counsels' skill and experience.

### 4. Time and Labor Was Required In Order to Litigate This Matter.

This Court is well-aware of the demanding and time-consuming nature of this case, as it has spent many hours considering and adjudicating the facts and issues at hand. The parties engaged in extensive discovery, complex summary judgment briefing, and substantial motion practice. Plaintiffs counsels' preparation throughout the litigation protected Plaintiff R.R.'s most valuable claims and set the stage for Mr. Galipoto put on a highly persuasive case at trial.

### D. BAV Firm's Submitted Hours Are Reasonable.

Each of Plaintiffs' attorneys has submitted time sheets documenting the hours he or she has dedicated to this case, providing the general subject matter of each expenditure. See *Lytle v. Carl*, 382 F.3d 978, 989 (9th Cir. 2004). Hours are reasonable if "at the time rendered, [they] would have been undertaken by a reasonable and prudent lawyer to advance or protect his client's interest in pursuit of a successful recovery..." *Moore v. James H. Matthews & Co.*, 682 F.2d 830, 839 (9th Cir. 1982)(internal quotations omitted). As the courts have recognized, civil rights lawyers working without payment from their clients have little to gain from "churning" a case:

It must be kept in mind that lawyers are not likely to spend unnecessary time on contingency fee cases in the hope of inflating their fees. The payoff is too uncertain, as to both the result and the amount of the fee. It would therefore be the highly atypical civil rights case where plaintiff's lawyer engages in churning [...].

*Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008). Accordingly, they should be fully compensated for taking the steps that they reasonably believe are necessary to win the case: "By and large, the court should defer to the winning

lawyer's professional judgement as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker." *Id.*

As lead counsel for Plaintiff R.R., Mr. Vogel made sure that the case was staffed in an efficient manner which avoided duplicating attorney work product. The attorneys would meet periodically and divide tasks. The written work that Mr. Vogel did not personally draft was drafted by Heather Quest. Ultimately, Mr. Vogel would review and edit the draft to create the final work product. Similarly, each of the depositions that Mr. Vogel did not personally take were taken by Ms. Quest after a meeting in which they reviewed the evidence and prepared appropriate questions and exhibits.

BAV Firm also utilized the services of paralegals Liisa Pynnonen and Cindy Hendricks to assist in managing the daunting research, information management, clerical, copying, scanning and filing duties necessary for the litigation. (BV Decl., ¶ 18)All paralegals and administrative assistants at BAV Firm follow a standard protocol in tracking their time by keeping track of their time contemporaneously on time sheet forms. In preparation for this motion, the staff reviewed their time sheets and entered into one itemization all their time spent working specifically on this matter. BAV Firm requests an hourly rate of $200 for their services.(BV Decl., ¶ 20, Exs. 5-7)

In sum, all the fees requested by Plaintiffs' counsel are entirely reasonable in light of consideration of the *Hensley* factors set forth above and should be approved by this Court.

E.  **BAV Firm's Requested Rates Are In Line with the Prevailing Market Rates.**

The party seeking fee-payment has the burden to produce satisfactory evidence "that the requested rates are in line with those prevailing in the community

for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Camacho, supra*, 523 F.3d at 979, see also *Jordan v. Multnomah County*, 815 F.2d 1258, 1262-63 (9th Cir. 1987). In calculating the "prevailing market rate" the court must conduct "a case-specific inquiry into the prevailing market rates for counsel of similar experience and skill to the fee applicant's counsel." *Farbotko v. Clinton City*, 433 F.3d 204, 209 (2d Cir. 2005). Rates awarded to civil rights counsel ordinarily should be on par with market rates for private attorneys engaged in other complex federal litigation. *Id.*, at 211, fn. 12 (internal citation omitted.) This burden can be met with "affidavits of the Plaintiffs' attorneys and other attorneys regarding prevailing fees in the community, and rate determinations in other cases." *Camacho, supra*, 523 F.3d at 979.

Here, Mr. Vogel is requesting an hourly rate of $700, and Heather A. Quest is requesting an hourly rate of $500. (BV Decl., ¶ 4, 19, 24; HQ Decl., ¶ 12) The billing rates of the BAV Firm are comparable to, or lower than, the rates charged by other firms for work by attorneys of comparable skill, experience and specialization in the Southern California legal community. Specifically, BV Firm's hourly rates are supported by a declaration from Barrett Litt, an expert in determining the reasonable billable rate for an attorney such as the attorneys at BAV Firm practicing BAV Firm's specialty in Los Angeles. (BV Decl., ¶ 5, See also Declaration of Barrett Litt, filed concurrently herewith)BAV Firm's rates are also supported by declarations of other civil rights specialists Mark Pachowicz and David McClane who also practice in Southern California. (BV Decl., ¶ 4, See also Declarations of Mark Pachowicz and David McClane, filed concurrently herewith)

### F. BV Firm Took On Great Risk Warranting the LodestarMultiplier Sought.

"The purpose of a fee enhancement, or so-called multiplier, for contingent

risk is to bring the financial incentives for attorneys enforcing import [rights] into line with incentives they have to undertake claims for which they are paid on a fee-for-services basis…" In *Clark v. Los Angeles*, the Ninth Circuit held that the following facts "illustrate clearly the need for an upward fee adjustment" of 2.0: (1) the undesirability of the case, (2) counsel's ability to obtain the relief sought by his client, (3) the fact that counsel's involvement in the case "necessarily precluded him from accepting other employment," and (4) the fact that "it was never clear that he would receive anything for his efforts" until the jury verdict. *Clark, supra*, 803 F.3d at 991-92. These same considerations make a lodestar adjustment of 1.5 appropriate here.

1. **BV Firm Took On a Risky and Undesirable Case.**

As explained above, the case was undesirable because the evidence against Plaintiff included unfavorable statements, criminal allegations, evidence of prior bad acts and character issues, and great difficulty in proving that the conduct of the officers was the cause of his death. Winning the case would require counsel to overcome stringent legal burdens associated with § 1983 cases. Once those burdens were overcome, counsel then would have the unenviable task of proving that s group of respected officers' use of force caused the death of a very unsympathetic decedent who was a former gang member, on parole, who had just voluntarily ingested a large amount of methamphetamine in order to avoid being pulled over with it in his possession. There was a very real risk that the jury might believe that Mr. Ramirez was going to die within minutes whether the police intervened or not and that his criminal behavior and ill-conceived decision to ingest a huge quantity of methamphetamine caused his death. (BV decl. ¶ 16c)

2. **BV Firm Successfully ObtainedRelief Sought By the Client.**

In procuring a favorable verdict in the amount of $2.9 million, it is beyond

PLAINTIFF R.R.'S NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES AND COSTS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
17

dispute that Plaintiffs' counsel obtained the relief sought by the Plaintiffs.

### 3. Plaintiffs' Counsel Was Precluded From Retaining Other Cases.

Due to the length and complexity of this case, Plaintiffs' counsel was precluded from pursuing several other viable cases. (BV Decl., ¶ 14)

### 4. There Was a Real Danger of Not Receiving Any Compensation

Plaintiffs' counsel engaged in representation on a contingent nature, placing substantial time and resources at risk. Plaintiffs' counsel had zero assurances that they would be compensated until the jury read the final verdict line. (BV Decl., ¶ 14). In light of the foregoing, a 1.5 lodestar multiplier of the same type approved by the Clark court is appropriate in this case.

## G. BAV Firm is Entitled to the Reimbursement of Costs.

Pursuant to 42 U.S.C. § 1983, prevailing parties "may recover as part of the award of attorneys' fees those out-of-pocket expenses that would normally be charged to a fee paying client." *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994)(internal quotation omitted.). "Reasonable expenses, though greater than taxable costs, may be proper." *Id.* at 20. See also *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896, F.2d 403, 407 (9th Cir.1990)("[o]ut-of-pocket litigation expenses are reimbursable as part of the attorneys' fees [under Section 1988], distinct from the costs already awarded to plaintiffs under 28 U.S.C. § 1920"). Such costs, including travel and courier expenses, are allowed as part of the fee. *Davis v. City and County of San Francisco*, 976 F.2d 1536, 1556 (9th Cir. 1992), vacated in part on other grounds, 984 F.2d 345 (9th Cir. 1993).

BAV Firm incurred substantial out-of-pocket costs prosecuting this case, including expert fees, court reporter fees, and other charges. The costs sought herein consist of the types of charges typically levied by BV Firm on clients, and were incurred, compiled and recorded throughout the case by BV Firm in the same

manner as is done for all matters. (BV Decl., ¶ 3, Ex. 2)

## V. Conclusion

In total, Plaintiff seeks an award for reasonable attorneys' fees (with a 1.5 multiplier) in the amount of $896,737.50, and reasonable costs in the amount of $4,379.48 (which is $15,062 minus the amount requested in the Bill of Costs in the amount of $10,682.52) for a total award of $901,116.98. Plaintiff respectfully requests that this Court award him these reasonable attorneys' fees and out-of-pocket costs pursuant to 42 U.S.C. § 1988 and the law of this Circuit.

Respectfully submitted.

Dated: July 24, 2015      LAW OFFICES OF BRIAN A. VOGEL, PC

By: *Brian Vogel*
BRIAN A. VOGEL
Attorney for Plaintiff R.R.